CASE 14.—ACTION BETWEEN HENRY M. HENSLEY AND
    THE BURT & BRABB LUMBER COMPANY IN-
    VOLVING THE TITLE AND BOUNDARY TO CER-
    TAIN LAND.—February 17.

# Hensley v. Burt & Brabb Lumber Co.

Appeal from Madison Circuit Court.

J. M. BENTON, Circuit Judge.

Judgment for defendant, plaintiff appeals—Af-
firmed.

1. Boundaries— Conflicting Elements—Control of Monuments.—It
   is the entry and survey of land which appropriates it, the
   patent merely confirming the survey, and where the patent
   calls for incorrect courses and distances to an existing mon-
   ument, or does not correspond with the actual survey, the
   location of the monument or the survey operates to correct
   the patent.

2. Public Lands—Patents—Construction—Reference to Other In-
   struments.—Where the calls of a patent are incorrect, any
   document referred to therein may be looked to to correct the
   patent, and, where a patent referred to the certificate of sur-
   vey, such certificate could be examined to correct the calls
   of the patent, if the intention of the parties can be gathered
   with reasonable certainty from the patent and the instrument
   referred to therein.

3. Public Lands—Patents—Construction—Intention.—In constru-
   ing a patent the intention of the grantor must be sought and
   effectuated, if possible.

4. Deeds—Construction—Construing Instruments Together—Pat-
   ent and Survey Certificate.—Where a patent, the calls of
   which were incorrect, referred to the surveyor's certificate
   and plat showing the correct courses and distances, which
   included a larger quantity of land, and the patentee con-
   veyed the land by the calls in the patent, and the patent
   was referred to in the deed, the certificate of survey and plat

became a part of the description in the deed and could be referred to to correct the erroneous calls therein.

5. Boundaries—Courses and Distances—Reversing Courses. — Where one of the calls of a deed containing six calls was erroneous, but the first two calls were to existing monuments which were correctly located, the error could be corrected and the boundary established by running the first two calls, and then reversing the calls from the first known corner and running the other lines until the third from the beginning on reversal was reached, and then running a line, disregarding the course called for by the deed, to the established third corner.

6. Deeds—Validity—Mistake as to Quantity—Effect.—Where the intention of the parties was to convey all of the land covered by a patent to the vendor, any mistake in the patent as to the land conveyed would not affect a conveyance of the patentee's title, especially after the land had passed to innocent purchasers, though the grantor might have a claim for the price of the additional land.

CLEON K. CALVERT for appellant.

## POINTS DISCUSSED.

Deeds—Description.—The appellee can hold under its deed from the Asher Lumber Company and its remote vendors no more land than is described in the deed from Harris to Asher Brothers and Chappell, and the deed from them to the Asher Lumber Company.

JAMES H. JEFFRIES for appellee.

## AUTHORITIES CITED.

Steel's Heirs v. Taylor, 3 A. K. Marshall 225; Alexander v. Lively, 5 T. B. Monroe 159; Bruce, &c., v. Taylor, &c., 2 J. J. Mar. 160; Hagins, &c., v. Whitaker, &c., 42 S. W. 751; Morgan, &c., v. Renfro, &c., 99 S. W. 311; Cornett v. Creech, &c., 100 S. W. 1188.

OPINION OF THE COURT BY JUDGE O'REAR—Affirming.

April 3, 1876, there issued to Louis Harris a patent for 200 acres of land now in Leslie county, on Lick

branch, waters of Greasy creek, a fork of the Middle fork of Kentucky river. The patent was based upon a survey made on August 8, 1873, when the land was a part of the territory of Harlan county. The calls of the patent were as follows: "Beginning at a spruce pine standing on the west bank of said branch; thence north 46 degrees west, 20 poles, to a white oak and two beeches; thence west, 50 poles, to a stake; thence north 40 degrees west, 200 poles, to a stake; thence south 65 degrees east, 215 poles, to a stake; thence south, 100 poles, to a stake; thence south 75 degrees west, 100 poles, to the beginning."

Patents for vacant land are issued alone upon surveys thereof, made by the county surveyor of the county where the land lies, and upon warrants issued by the county court of that county. The county surveyor is required to actually survey the land, and to make and file with the register of the land office (now the Auditor of State) a certificate of the survey as made by him, and a plot showing the boundary of the land.

The certificate and plat of the county surveyor of Harlan county were filed in the land office, upon which this patent was issued. The certificate of the survey contained the identical description given in the patent, except that in the third line, where the patent calls for "north 40 degrees west, 200 poles," the certificate calls for "north 10 degrees west, 200 poles." When the patent is run out by its calls it lies in this shape:

Hensley v. Burt & Brabb Lumber Co.

It contains less than 71 acres, and does not close. In fact, its last line is far south of the beginning corner, while the next to the last line passes through the beginning corner and some rods beyond it. The patent lines cannot be made to close if run by its calls. The calls of the surveyor's certificate do close. They embrace about 175 acres. The shape of the plot when run by the certificate agrees exactly with the plot filed with the certificate. The following map shows the lines of the plot when run by the certificate of survey, being shown in the solid lines, while the

dotted lines show the plot when run literally by the calls of the patent:

It is evident from the foregoing that an error occurred in the land office in issuing the patent. It was in writing the course of the third call 40, instead of ten. The fact is shown to be that the patentee preempted and there was surveyed for him the land embraced in the lines laid down in the surveyor's certificate. It is that fact which the patent is intended to carry into effect. It is the entry and survey which appropriated the land; it is the patent which confirms the fact, and undertakes to pass the title of the Commonwealth to the land actually entered and surveyed. If there is a mistake in the

patent, it may be corrected in any appropriate way. If the mistake is one shown on the face of the patent, or when it comes to be applied on the ground by the actual running of the lines, it will be corrected by the truth then shown by the running, and stands corrected thereby as if the true running were stated in the patent. This is the familiar course where the patent calls for a particular course or distance to a natural or marked monument, and if the monument is located, but shown to be at a different distance or course than called for by the patent, the monument controls, and the calls of the patent stand corrected ipso facto. So where the patent calls when run demonstrate that they are incorrect, it is equally permissible to look to any other document of record, called for by the patent, or alluded to in it, to ascertain where the error is, and to thereby correct it. The surveyor's certificate is alluded to in the patent and is necessarily the foundation for the patent. It is of at least equal dignity with it as a public record. When it is looked to, as it should be in case of doubt as to the correct meaning of the language describing the lines as contained in the patent, if it shows where the error in the patent is, then the patent should be read as thus corrected, for the intention of the parties was to pass the title to the land entered and surveyed, and that intention will be effectuated where it can be gathered with reasonable certainty either from the document to be construed, or from it in connection with other ascertainable evidence referred to in it. Steele's Heirs v. Taylor, 3 A. K. Marsh, 225, 13 Am. Dec. 151; Aleander v. Lively, 5 T. B. Mon. 159, 17 Am. Dec. 50; Bruce v. Taylor, 2 J. J. Marsh, 160; Hagins v. Whitaker (Ky.) 42 S. W. 751, 19 Ky. Law Rep. By this standard the error in

the patent is corrected as if in it had been incorporated the identical calls in the surveyor's certificate.

On November 7, 1889, the patentee sold the land supposed to be covered by this grant to J. C. Chappell, and executed a deed to him, in which the description of the land is in terms exactly like those in the patent. Chappell conveyed to Ashers, and they to appellee. Thereafter on May 10, 1904, the patentee executed a deed to appellant and J. L. Lewis for a boundary of land, which is ascertained to be the remainder of the original grant from the State, as run by the surveyor's certificate and plat, after deducting from it that part of the land which lies within it, as described by the calls of deed from the patentee to Chappell as run literally. Appellant and Lewis contend that the patent should be construed as corrected by the calls of the surveyor's certificate and the plat filed by him in the land office, which is right, as we have seen; but they contend that a different rule applies in the construction of the deed from the patentee to Chappell. Just why a different rule should be applied for construing ambiguous language in a patent from that in construing an ambiguous deed is not pointed out, nor are we able to see why it should be so. The purpose of each instrument is the same. It is to convey the title to a particular parcel of land. In construing each the intent of the grantor is sought for, and is to be effectuated if possible. The reason for the rule which is applied in constituting one paper applies with equal force to the other.

When appellant went to buy the residue of the patent boundary from the patentee, the way he discovered, or thought he discovered, there was a residuum, was by correcting the patent calls obviously

erroneous, by the calls of the surveyor's certificate, which clearly showed that the latter calls were right; then by substracting from that correct boundary the boundary made by the patentee's deed to Chappell. But he must have seen that the patentee in using the identical calls in his patent in the Chappell deed intended to convey all the land covered by that patent, and, if the patent was sufficient to embrace it all, then the deed also must have been sufficient for the same purpose. The deed referred to the patent, and it must have been examined in ascertaining the correct running of the lines, if they were found not to close. When the patent was looked to, it disclosed the same infirmity as the deed, and, as it referred to the surveyor's certificate and plat, they became parts of the description, which must be consulted in arriving at the true meaning of the doubtful language in the calls of the deed. Beside, by running the first two calls of the deed and patent—which had known corners, marked monuments still in existence—those two lines were correctly located. Then by beginning at the first corner, reversing the calls, the other lines run till the third from the beginning was reached, when by running that line (the third in the deed and patent) so as to reach the established third corner, disregarding its course as called for in the papers, as is the rule, the boundary would be the same as is found by consulting the surveyor's certificate and plat. This method is permissible, and it is one of the ways of ascertaining where the mistake is, and of correcting it, even without resorting to the surveyor's certificate, as if, for example, that had been lost; but the two methods, when applied, prove beyond doubt where the error occurred, and correct it automatically so as to effectuate the real intent of the grantors.

Appellant took the deposition of the patentee Harris, who testified that Chappell had the land surveyed when he bought it, and reported that it contained but 79 acres, and paid him for that quantity only; but it is clear from the testimony of this witness that his intention at the time was, and such was the purpose of the parties, to convey his title to all the land covered by his patent.  They may have made a mistake as to its quantity; but that would not affect the conveyance of his title, particularly after it had passed into the hands of an innocent purchaser for value.  The patentee may have a claim against Chappell for the balance of the purchase money.  The only mistake was as to the amount to be paid for the land, not as to the piece of land sold and intended to be conveyed.

We conclude, as the circuit court did, that the deed from the patentee, Harris, to John C. Chappell conveyed all the land covered by the patent, and that appellant and Lewis took nothing by their subsequent deed from the patentee.

Judgment affirmed.