[L. A. No. 2497.   In Bank.—December 27, 1910.]

## COUNTY OF LOS ANGELES, Respondent, v. JOSEPH E. HANNON et al., Appellants.

DEED—UNCERTAINTY OF DESCRIPTION.—Where a deed shows on its face an indefinite description of property, or where the description contained in it is so imperfect that with the aid even of surrounding circumstances a court is unable to say what particular land is intended to be conveyed, the deed must be declared void for uncertainty.

ID.—UNCERTAINTY VITIATING DEED.—A deed is only void for uncertainty where it is apparent from its face that the intention of the grantor as to the property conveyed is so uncertain that it is incapable of being made certain by resort to extraneous facts.

ID.—IDENTIFYING DESCRIPTION BY EXTRANEOUS FACTS.—Where the description only tends to create an uncertainty as to what property the grantor meant to convey by it, his intention may be sought for by a consideration of all the facts surrounding the parties when the instrument was made. The court will take these facts into consideration so as to place itself in the situation of the parties and determine, if possible, therefrom the identity of the land which was meant to be conveyed by the description used.

ID.—DEED PRESUMED TO BE INTENDED AS CONVEYANCE.—It is to be presumed from the making of a deed that the grantor intended to convey some property by it, and that presumption is to be indulged and all proper evidence and inferences therefrom considered to make the instrument effective for that purpose.

ID.—DEFINITION OF WORD "AT."—The word "at," when applied to the place or location of an object is not treated as definitely locative. It denotes nearness or proximity, and is less definite than "in" or "on."

ID.—INTERPRETATION OF DESCRIPTION—OBJECT REFERRED TO AS "AT" A PARTICULAR PLACE.—Where a deed described the land conveyed as being all the land between two designated lines of railway "from their junction at Garvanza depot to Pasadena Avenue, where said avenue lies between said railway lines," it is held, from a consideration of the circumstances surrounding the execution of the instrument and the conditions of the locality when the conveyance was made, that the property intended to be conveyed was a triangular piece of land situated to the west of said avenue and lying between said railway lines from a junction thereof in the neighborhood of, but to the west of, said Garvanza depot.

QUIETING TITLE—VENDEE UNDER CONTRACT OF SALE—EQUITABLE TITLE.— The interest of a vendee under a contract for the sale of land is merely equitable, and he cannot maintain an action to quiet title against a subsequent grantee of the legal title.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. Frederick W. Houser, Judge.

The facts are stated in the opinion of the court.

Haas, Garrett & Dunnigan, McNutt & Hannon, and Lee C. Gates, for Appellants.

J. D. Fredericks, District Attorney, and Hartley Shaw, for Respondent.

LORIGAN, J.—This action was brought to quiet title to a tract of land in Los Angeles County. Plaintiff had judgment and defendants appeal therefrom and from an order denying their motion for a new trial.

All parties asserted title to the property from a common grantor, Andrew Glassell, the plaintiff claiming under a deed made by said Glassell and one Ralph Rogers to D. McCool. This deed to McCool described some property not involved in

this action, but as the whole description must to some extent be examined in determining the meaning of the description of the particular property involved here, the entire description is set forth and is as follows: "Being a strip of land thirty (30) feet in width on either side of a center line of what is now known as the California Central Railway, commencing at a point in the center of San Rafael Avenue, where said railway crosses said street, according to a map of the town of Garvanza, now on file in the office of the county recorder of Los Angeles County, state of California, in book 9, of miscellaneous records, pages 45 and 46, and running thence in an easterly direction along the center line of said railway to the point on said center line where the Garvanza cutoff line diverges from the original center line of the old San Gabriel Valley Railroad, running thence easterly along the center lines of both the above lines of railroad to their intersection with the easterly line of the Rancho San Pascuals, and to said easterly line of said rancho. *Also all of the land lying between the two lines of said railway from their junction at Garvanza depot to Pasadena Avenue, where said avenue lies between said railway lines.*"

It is with reference to this particular description in the deed, which we have italicized, that the principal controversy in this case arises, the claim of appellants being that the deed is void for uncertainty in the description.

As far as the description on the face of the deed is concerned it is quite apparent there is no uncertainty in it. It describes a triangular tract of land having for its boundaries two lines of railway and Pasadena Avenue. In order to apply the description in the deed to the land in controversy, and as described in the complaint, the plaintiff introduced a map showing the location of the lines of railroad and Pasadena Avenue, the essential features of which map are produced here on a smaller scale.

It will be observed that on this map there are two junctions of the lines of railways mentioned in the deed, one lying to the east, the other to the west of Pasadena Avenue, and that there are two different triangular tracts of land bounded by the railways and said avenue. It was stipulated that the Garvanza depot was not located at either point of junction of said railways, but was located at the point indicated on

the diagram above, and that the map as to railways, avenue, and location of depot presents the situation as it existed when the deed to McCool under which plaintiff claims was made. It is admitted by appellants that the tract west of Pasadena Avenue embraces the land relative to which this action is brought, but it is insisted that as the map introduced in aid of locating the land as described in the deed shows that one of the calls therein—the junction of the railways—cannot be determined by reference to the Garvanza depot and hence the description in the deed applies equally well to the two triangular tracts of land on either side of Pasadena Avenue and similarly bounded, a patent ambiguity is created to which parol evidence could not be addressed, and therefore the deed was void for uncertainty in its description. It is further insisted, if this contention is not correct, that the description in the deed applies to the eastern and not to the western triangular piece involved in this suit.

There can be no doubt that where a deed shows on its face an indefinite description of property, or where the description contained in it is so imperfect that with the aid even of surrounding circumstances a court is unable to say what particular land is intended to be conveyed, the deed must be declared void for uncertainty.

In the case at bar, however, there is no uncertainty of description on the face of the deed. The uncertainty arose from the production of the map in an effort to identify the land described in the deed. There was no patent ambiguity appearing on the face of the deed, but a latent ambiguity arising from parol evidence—the production of the map—containing two junctions of the railway, and there can be no question that under such circumstances extrinsic evidence is properly admitted to explain such latent ambiguity and show which junction was meant.

A deed is only void for uncertainty where it is apparent from its face that the intention of the grantor as to the property conveyed is so uncertain that it is incapable of being made certain by resort to extraneous facts. When, however, the description only tends to create an uncertainty as to what property the grantor meant to convey by it, his intention may be sought for by a consideration of all the facts surrounding the parties when the instrument was made. The court will take these facts into consideration so as to place itself in the situation of the parties and determine, if possible, therefrom the identity of the land which was meant to be conveyed by the description used.

The general rules in that respect are well settled.

"A deed is not to be held void for uncertainty if by any reasonable construction it can be made available. Parol evidence cannot be admitted to contradict or control the language of a deed, but latent ambiguities may be explained by such evidence, and the technical terms of art. Facts existing at the time of the conveyance, and prior thereto, may be proven by parol evidence, with a view of establishing a particular line as being the one contemplated by the parties, when by the terms of the deed such line is left uncertain." (3 Washburn on Real Property, 6th ed., sec. 2320.)

In 1 Jones on Real Property, sec. 323, the author says:—

"A deed will not be declared void for uncertainty if it is possible by any reasonable rule of construction to ascertain from the description, aided by extrinsic evidence, what property it was intended to convey. The office of a description is not to identify the land, but to furnish the means of identification. The description will be liberally construed to afford the basis of a valid grant."

Our own court has declared in *Stanley* v. *Green,* 12 Cal. 148, that: "The law will not declare the instrument void for uncertainty until it has been examined with all the light which contemporaneous facts may furnish. If these render the intention clear and the words of the instrument are, by fair rendering, susceptible of a construction to uphold such intention, then they will be so construed and the instrument enforced."

So for the purpose of explaining and removing any latent uncertainty in a description "the court will place itself as nearly as possible in the position of the parties when the instrument was executed, and will consider the origin and sources of its derivation, all the attendant surrounding circumstances or the existing state of facts, the situation of the parties and of the property, or the condition or state of things granted at the time, the state of the country, and generally all sources of inquiry, naturally suggested by the description, or which may have acted upon the minds of the parties." (13 Cyc. 607-8.)

Under the rule announced parol evidence was introduced, and though in some particulars conflicting, certain facts, among others, must, in support of the conclusion of the court that the description in the deed embraced the tract of land west of Pasadena Avenue and between the railways, be taken as established. It was shown (which does not appear on the map introduced in evidence or on the foregoing diagram) that there was a deep and wide arroyo or gully known as the "Arroyo Seco" lying between the two points of the junction of the railways; this arroyo was between Garvanza depot and the eastern junction of the railways, the depot being west of the arroyo and distant about 1,000 feet from the western junction of the roads and some 2,000 feet from their eastern junction. When the deed was made the territory to the west of the "Arroyo Seco" was known by the name of "Garvanza" and the western junction of the railways was located in the territory so generally designated. This name "Garvanza" was not applied to any territory lying east of the Arroyo Seco in which the eastern junction was located. The territory or neighborhood near which this eastern junction was located was known generally as "Lincoln Park." It will be observed, too, from the description of the other property conveyed in the deed immediately before the description here

involved that when occasion is had to designate the eastern junction of the railways it is referred to as "their intersection near the easterly line of the Rancho San Pascuals."

It is to be presumed from the making of a deed that a grantor intended to convey some property by it, and that presumption is to be indulged in here and all proper evidence considered and all inferences and deductions therefrom to be indulged in to make the instrument effective for that purpose. The only trouble with the description in the deed under consideration arises from the call for a junction of the railways "at Garvanza depot" as part of the description of the property conveyed. It appears that there was no such junction at Garvanza depot itself. If that call must be construed as absolutely locative of the junction referred to, it is beyond doubt a false call and would have to be rejected, as it is conceded that there is no junction "at Garvanza depot." Rejecting this call as false, the effect would be that there would be nothing in the deed which would indicate which junction of the railways was meant, whether the western or the eastern junction, and hence the deed would be void for uncertainty, a conclusion which must not be reached if a different one can be adopted.

But the word "at" when applied to the place or location of an object, is not treated as definitely locative. Webster defining the word "at" declares: "Primarily this word expresses the relation of presence, nearness in place or time, or direction toward. . . . It is less definite than in or on. At the house may be in or near the house."

In 3 Ency. of Law, 2d ed. 167, it is said: "At, used in reference to time or place, has frequently the sense of near."

A railroad was authorized by its charter to intersect another railroad "at Charlotte" and it was held that an intersection a thousand yards outside Charlotte satisfied the requirement, the court saying: "The word 'at' when used in reference to place, frequently means in or within, but not always. It sometimes denotes nearness or proximity. That is its primary significance, and it is less definite than in or on. At the house may be in or near the house. Its significance would generally be controlled by the context and attending circumstances, if any, denoting the precise sense in which it is used." (*Purifoy v. Richmond etc. R. Co.*, 108 N. C. 100, [12 S. E. 741].)

A tract of land near the terminus of a railroad was held exempt under a statute exempting certain lands "at" the terminus, the court considering the matter saying: "The word 'at' is somewhat indefinite; it may mean in, or within, . . . or it may mean near. Its primary idea, the lexicographer says, is nearness, and it is less definite than in or on." (*State* v. *Receiver etc.*, 38 N. J. L., 299, 302. See, also, *Rogers* v. *Galloway etc. College*, 64 Ark. 627, [44 S. W. 454, 39 L. R. A. 636]; *Minter* v. *State*, 104 Ga. 743, [30 S. E. 989]; *Bartlett* v. *Jenkins*, 22 N. H. 53; *West Chicago etc. Co.* v. *Manning*, 70 Ill. App. 239.) Other authorities to the same effect might be cited, but it is unnecessary, as the rule announced is hardly open to question.

Now applying this rule as announced and taking the word "at" as having the primary meaning of nearness, and also that it is a relative term, the signification of which is to be determined by taking into consideration the circumstances surrounding and attending its use, and the meaning of the expression "at Garvanza depot" in referring to a junction, can be reasonably construed as applying to the western junction of the railways.

It must be assumed that the parties to the deed knew the conditions of the locality when the conveyance was made. They had a junction of the railroads in view or it would not have been referred to. If there were no other junction save the one west of Pasadena Avenue, there could be no question but that the reference to a junction "at Garvanza depot" would be held to mean that junction. This would follow under the rule that the word "at" is merely indicative of nearness, and we think this signification was properly given to it by the trial court, as the Garvanza depot was much nearer to the western junction than the eastern, and was in the same territory as the western junction was situated on, and it would be only natural, when referring to a junction in the same territory—Garvanza,—in which the depot was situated, to associate the junction with the depot. This construction is all the more reasonable and warranted when we consider that the eastern junction was not in the territory known as "Garvanza," but in territory known as "Lincoln Park." Added to this is the circumstance that when there is occasion to refer to the intersection of the two lines of railroad at

their eastern junction, such junction is not designated as "at Garvanza depot," but is designated as the "intersection near the easterly line of the rancho San Pascuals." It will be observed, too, by examining the full description in the deed, that this description of the eastern junction is found immediately preceding, and by but a few lines, the description here in question, and yet when we come to this later description where the junction of these railroads is again referred to, it is mentioned as a junction "at Garvanza depot." It is hardly possible that if this last reference to a junction was intended to be to the same junction as previously described, the person drafting the deed would have in such a brief space of time indulged in such a variety of expression to describe it. This difference in expression as to the location of the separate junctions of these railroads was a potent circumstance warranting the conclusion that as the first description undoubtedly referred to the eastern junction, the subsequent immediate reference to a junction by different description must mean another junction, and, necessarily, the only other junction known to exist,—namely, the western junction.

Under the evidence and the reasonable deductions to be drawn therefrom, we think the trial court was justified in concluding that there was no uncertainty in the description in question, but that the reference in the deed to the junction "at Garvanza depot" was intended to mean the western junction of the railroads, and that the land intended to be conveyed by the deed was the triangular piece of land lying to the west of Pasadena Avenue and between the two railroads.

In this view it is hardly necessary to discuss the claim of appellants that the deed was intended to describe the easterly triangular tract of land.

Now as to the other points on this appeal. The appellants W. B. Judson and Julia N. Rogers assert title to all the block described in the complaint except four lots therein. Their claim, however, was based solely on the proposition that the deed to McCool was void, and as we have seen that it was not, no further discussion of the claim of these particular appellants is necessary.

The appellant Joseph E. Hannon asserts title to the four lots above referred to under a claim that, conceding the deed

to McCool to be valid, appellant is nevertheless the owner of the four lots by title superior to plaintiff.

As to this claim. It appears that on December 26, 1885, Andrew Glassell, the then owner of the property in question, made an agreement with Ralph Rogers and W. E. Rogers (which was immediately recorded) to sell and convey the property in dispute to them. The contract provided that Glassell would convey the property to the Rogers "or to such person as they may request"; that the Rogers might negotiate sales of portions of the property and that Glassell would convey to the purchasers; and that on receipt of the full consideration specified in the contract—one hundred and thirteen thousand dollars—he would convey to the Rogers "whatever balance may remain (of said property) after deducting such lots . . . as may have been . . . conveyed by virtue of the privilege above stated." On October 27, 1887, Ralph Rogers made a deed of trust to A. D. Childress, purporting to convey to him some 180 lots, including the four lots in question, in trust for the benefit of persons to whom Rogers had sold or agreed to convey said property. On April 25, 1888, the deed from Glassell and Ralph Rogers to McCool was made, which embraced these four lots, and was the commencement of the title of plaintiff. On July 12, 1888, Glassell made a deed to Ralph Rogers, which was joined in by W. E. Rogers. No particular description of the land intended to be conveyed by this deed is given, but it is described as all the land which was agreed to be conveyed by the agreement of December 26, 1885, except "all the lands and property expressly excepted by the terms of the contract of December 26, 1885." In 1894 A. D. Childress made a deed to appellant Hannon, purporting to convey to him the four lots in dispute, and he asserts title to them under this conveyance, supported by the deed from Glassell to Ralph Rogers of July 12, 1888.

It is contended by appellant that as the contract between Glassell and Rogers antedated the deed from Glassell to McCool, appellant, under the Childress deed to himself, supported by the conveyance from Glassell to Rogers, acquired a title superior to plaintiff to these four lots.

This claim is met by the assertion on the part of plaintiff that the trust-deed from Rogers to Childress is void for various reasons assigned. We perceive no necessity, however,

for discussing that claim, because we are satisfied that if the appellant acquired any title whatever to the lots in question, it was an equitable one, arising solely under the contract of sale between Glassell and the Rogers, which title he is in no position to assert in this action to quiet title.

Conceding that the deed of trust from Rogers to Childress was valid, it only transferred such right in the property as Rogers had under his contract of sale with Glassell, which was purely an equitable right. When Rogers made the deed to Childress the legal title was in Glassell. It is true that Glassell had agreed to convey the land to Rogers, but in fact he conveyed the legal title to the property (Rogers joining in the deed) to McCool by the deed of April 25, 1888. The deed from Glassell to Rogers made July 12, 1888, which appellant contends operated in aid of the conveyance from Rogers to Childress, did not affect the situation whatever. Glassell could not thereby convey any legal title to the property, as he had already conveyed it to McCool. In fact the Glassell deed did not purport to convey these lots to Rogers, but excepted them. Rogers had joined in the deed from Glassell to McCool. The only interest Rogers then had was that acquired under a contract of sale with Glassell, which provided that the latter might convey any of the property described in the contract to such persons as Rogers might request, and the only purpose of Rogers in joining in the conveyance to McCool was to show that it was made at his request. Now the deed from Glassell to Rogers, made after the conveyance by them to McCool, was in satisfaction of the contract of December 26, 1885. But as that contract provided that Glassell should convey to Rogers only that portion of the property which had not been conveyed at the request of Rogers to other persons, and the deed made by Glassell to Rogers in satisfaction of the contract excepted from its operation all portions so conveyed at the request of the latter, it is clear that as Glassell had previously conveyed to McCool the lots in dispute at the request of Rogers, the latter took no title whatever to them under the deed of July 12, 1888.

It is apparent, therefore, that if the appellant Hannon acquired any interest in the lots in question, it was purely an equitable one under the contract of sale between Glassell and Rogers. He has no legal title because that passed to McCool,

and is now vested in the plaintiff. The appellant is not asserting any rights under the contract of sale. His answer denies title in plaintiff and alleges that he is the owner in fee of these four lots. In effect his answer is in the nature of a cross-complaint to quiet his alleged ownership of this property in fee. But it is clear that he is not such owner; he has no legal title to it; that is in the plaintiff. While appellant averred in his answer a legal title he proved what is at best an equitable one, and this he seeks to have quieted against the legal title held by plaintiff. It is the settled law, however, that an action to quiet title cannot be maintained by the holder of an equitable title against one holding the legal title. (*Von Drachenfels* v. *Doolittle,* 77 Cal. 295, [19 Pac. 518]; *Tuffree* v. *Polhemus,* 108 Cal. 670, [41 Pac. 806]; *Fudickar* v. *East Riverside Irr. Dist.,* 109 Cal. 29, [41 Pac. 1024]; *McDonald* v. *McCoy,* 121 Cal. 55, [53 Pac. 421]; *South San Bernardino L. and I. Co.* v. *San Bernardino Nat. Bank,* 127 Cal. 245, [59 Pac. 699].)' Under these authorities as whatever right the appellant may have acquired under the contract of sale to the four lots in question is purely an equitable one, he cannot in this action and under his pleadings assert it against the legal title held by the plaintiff.

The judgment and order appealed from are affirmed.

Angellotti, J., Sloss, J., Melvin, J., and Henshaw, J., concurred.

Shaw, J., being disqualified, does not participate in the foregoing.

Rehearing denied.