### SMITH et al. v. BROWN et al.

(Circuit Court of Appeals, Fifth Circuit. January 6, 1925.)

No. 4318.

**1. Courts ⬅⮞352—Objection that appointment of special master was void under equity rule 59, made for first time to master on hearing, held too late.**

Objection that appointment of special master to take and report testimony on court's own motion was void under equity rule 59, made for first time to master on taking of testimony, and not made to court until cause was submitted for final decree, was too late, and order was effective.

**2. Quieting title ⬅⮞10(2)—Under law of Texas, vendors, retaining vendor's lien, held not deprived of right to sue to remove clouds from title.**

Plaintiffs, who conveyed land, retaining vendor's lien, were not deprived of right to sue to cancel, as clouds on their title, deeds from their grantor to defendants, since under law of Texas vendor, retaining lien for unpaid purchase price, has superior title.

**3. Evidence ⬅⮞460(2)—Parol evidence admissible to show circumstances under which deed made and subject-matter to which parties referred.**

Parol evidence is admissible to show circumstances under which deed was made and subject-matter to which parties referred.

**4. Evidence ⬅⮞433(4)—Parol evidence of parties' intention held admissible to correct misdescription in deed.**

Parol evidence was admissible that there was no land in existence known as "section 102, T. & N. O. R. R. Co. survey," the description contained in deed, but that land correctly described as "section 102, H. & T. C. R. R. Co. survey," was owned by grantor at time of conveyance, and subsequently claimed by grantee, under deed, presumption being that parties con-

tracted with reference to land owned by grantor.

**5. Deeds ⬅⮞211(2)—Evidence held to show description in deed was mistake.**

In action to cancel deed from plaintiffs' grantor to defendants as cloud on plaintiffs' title, evidence *held* to show that description in plaintiffs' deed was mistake, and that land described in deed to defendants was intended.

**6. Vendor and purchaser ⬅⮞244 — Evidence held to show defendants were not innocent purchasers.**

Evidence in suit to remove clouds from title *held* to show that defendants conspired to acquire title adverse to plaintiffs by taking advantage of defective description in plaintiffs' deed, discovered by defendants while employed as attorneys to make abstract of plaintiffs' title, and were not innocent purchasers.

Appeal from the District Court of the United States for the Eastern District of Texas; W. Lee Estes, Judge.

Suit by George W. Brown and another, receivers of the Miller-Link Lumber Company, against Garland Smith and others. Decree for plaintiffs, and defendants appeal. Affirmed.

C. A. Lord, of Beaumont, Tex., for appellants.

C. L. Carter and Homer L. Bruce, both of Houston, Tex., opposed.

Before WALKER and BRYAN, Circuit Judges, and CLAYTON, District Judge.

CLAYTON, District Judge. On April 2, 1923, the several cases pending on the equity side of the District Court were consolidated in the amended bill of complaint, the cause now here, which is an ancillary proceeding by Brown and Sims, receivers of the Miller-Link Lumber Company, a corporation. The purpose of the suit was to cancel, as clouds on plaintiffs' title, the deed from B. W. Johnson to Howell, and the deed from Howell to W. P. Smith, one of the defendants, as trustee for Black, another defendant, purporting to secure the payment of a note jointly given by the defendants Howell, Garland Smith, and Lanier. The answer set up that the defendants were innocent purchasers of the lands, and, more specifically, that in good faith and for a valuable consideration, and without knowledge or notice of plaintiffs' title or claim, they had acquired conveyance of and title to the property covered by the deeds.

The court decreed that plaintiffs, the receivers, should have and recover of and from the defendants, Garland Smith, Lanier, Howell, Black, and W. P. Smith, the title and right of possession in the lands

conveyed to Howell by Johnson by the deed of January 11, 1922, and under which the defendants asserted title, and also that the title and right of possession in and to the other land claimed by the defendants, and misdescribed in the Carroll deed of March 7, 1905, under which the plaintiffs derive title, be divested out of the defendants and vested in the plaintiffs; and it was decreed specifically that the deed from Johnson to Howell, and that from Howell to Smith, trustee, be canceled. This appeal is from the decree.

[1] Without the consent of the parties, and without motion therefor, the court appointed a special master to take and report to the court the testimony in the cause, with his conclusions of law and fact. Appellants, defendants below, assign such action of the court as error, as being in violation of equity rule 59. In considering the case as it is now before us, it is unnecessary to interpret this rule, as it was done in Flanders v. Coleman (D. C.) 249 F. 757, and in Holt Mfg. Co. v. Best Gas Tr. Co. (D. C.) 245 F. 354, although it appears that the conclusions in those cases were correct; for here the special master was appointed to take and report to the court the testimony, and no objection was interposed at the time the order was made. It must be said that the defendants acquiesced in the order of reference, or, in the absence of objection, the court had the right to assume that the reference was agreeable to the parties. Not until the master was proceeding to take the testimony was there any objection to such course, and even then it was presented to the master and not to the court. That was neither the time nor the place to initiate or to interpose the objection. The record also shows that not until the testimony had been taken, and at the time the cause was submitted upon the pleadings and testimony for final decree, was any objection ever made to the court itself to the order authorizing the special master to take and report the testimony. It was then urged before the court that such order was in violation of rule 59, and therefore void.

The contention is without merit. The order was not void. There being no objection at the time of its entry, the order was within the discretion of the court, and having been so entered, and no motion for its revocation having been offered, the order was effective, and in pursuance thereof the master did what he should have done; that is, heard and reported the testimony to the court. The order provided for the taking

and presentation of the testimony to the court, and all testimony bearing on the issues was, as a matter of fact, reported to the court; and upon this testimony, not upon the conclusions of the master, the rights of the parties were finally adjudged by the court itself, after having given two days' consideration to the pleadings and the testimony. Moreover, the conclusions in the decree are supported by the established facts, and therefore the decree was in no sense a mere acquiescence in or formal confirmation of the reported findings of the master. The court ascertained the facts and applied the law independently of the master's conclusions; that is to say, in this case the master was required to take and report, and did take and report, the testimony in such manner that intelligent action thereon might be had by the court, and upon the pleadings and the testimony the court finally determined the rights involved in the controversy.

[2] It is urged by appellants, defendants, that appellees, plaintiffs, could not maintain this suit, for the reason that, subsequent to the bringing of it and pending the adjudication of the rights of the parties, they, appellees, had made a sale of the land and in the instrument of such sale retained the vendor's lien to secure the payment of the purchase price. The fact that the plaintiffs, appellees, had made such sale, did not deprive them of the right to maintain and prosecute their suit, for under the law of Texas the vendor of land who retains lien to secure the unpaid purchase money has the superior title to the land. Such conveyance did not annul the right of the plaintiffs to prosecute the suit; but it operated only to render the rights of the plaintiffs subservient to the rights of their vendee. Dunlap v. Wright, 11 Tex. 597, 598, 62 Am. Dec. 506; Smith v. Olsen, 92 Tex. 181, 183, 46 S. W. 631; Hearne v. Erhard, 33 Tex. 61, 67. Such being the rule of property in Texas, the duty was incumbent upon the receivers to prosecute the suit for the benefit of their vendee, for they were bound to make good their sale to their purchaser.

[3] Appellants complain of the admission on the trial of parol evidence to correct the error in description of the lands conveyed in the deed to appellees. They urge that, where the description in the deed is plain, clear, and unambiguous, parol evidence is inadmissible to show that it was intended by the parties to convey land not described (Scheller v. Groesbeck [Tex. Com. App.] 231 S. W. 1092), and, in elaboration of the rule, that parol evidence, whether brought

in by parties or strangers, cannot make a deed convey land which it does not purport to convey, or prevent it from conveying that which it clearly purports to convey; it being settled that such a deed cannot be collaterally attacked by the parties to it, or their privies, by evidence tending to show an intention different from that which its language unmistakably expresses (Davis v. George, 104 Tex. 108, 134 S. W. 326). But this rule is not applicable to the instant case, however appropriately it may have been invoked in the two cases just cited, relied on by appellants. Certainly the court of equity on the facts here was compelled to hold that such rule could not be applied, for that would have defeated manifest truth and justice.

It is a well-established principle that parol evidence is admissible to show the circumstances under which the contract was made and the subject-matter to which the parties refer. Peisch v. Dickson, Fed. Cas. No. 10911, 1 Mason, 11, cited with approval in the opinion of the court by Justice Barbour in Bradley v. Steam Packet Co., 38 U. S. (13 Pet.) 89, 99, 10 L. Ed. 72, where it is stated that the principle is not confined to mercantile contracts, but that the rule is applied to all other instruments, and that "sometimes it has been applied to deeds, sometimes to wills, and sometimes to mercantile and other contracts." And again: "In some cases it has been resorted to, to ascertain which of several persons was intended; in others, which of several estates; in some, to ascertain the identity of the subject; in others, its extent; in some, to ascertain the meaning of a term. * * * But in all, the purpose was the same—to ascertain by this medium of proof, the intention of the parties, where, without the aid of such evidence, that could not be done, so as to give a just interpretation to the contract."

Although parol evidence is not admissible to prove that the parties intended something different from that which the written language expresses, or which may be the legal inference and conclusion to be drawn from it, yet it is always competent to give in evidence existing circumstances, such as the actual condition and situation of the land, buildings, passages, water courses, and other local objects, in order to give definite meaning to language used in the deed, and to show the sense in which particular words were probably used by the parties, especially in matters of description. This is a quotation from Salisbury v. Andrews, 19 Pick.

(Mass.) 250, cited in Chattahochie, etc., v. Pilcher, 163 Ala. 401, 405, 51 So. 11.

[4] Here the deed describes the land as "section 102, T. & N. O. R. R. Co. survey," when as a matter of fact, not to say common knowledge, there was no such land in existence; but there was land correctly described as "section 102, H. & T. C. R. R. Co. survey," which the grantor of appellees owned and claimed at the time of the conveyance, and which the appellees subsequently and at all times claimed under their conveyance from their grantor. In Chambers v. Ringstaff, 69 Ala. 145, 146, Chief Justice Stone, for the court, where the erroneous description in the conveyance of the land was corrected by oral testimony given to the jury, said:

"Now, we judicially know that there is but one tract of land in Alabama which corresponds with this description. There is but one range 18 in the state, and that lies east of the basis meridian of St. Stephens. There is but one township 12 that bisects range 18, and that is north of the base of that survey. In aid of the description in the mortgage, there was oral testimony given to the jury that, when the mortgage was made, Mrs. Knight owned, and she and her husband resided, on lands situate in Montgomery county, Ala., known by the same numbers as those employed in the mortgage. There is no proof that either of them owned any other lands, either in Alabama or elsewhere. It was admitted that the lands sued for had been the property of Mrs. Knight. Now, if it be conceded that the unaided description of the lands given in the mortgage is too uncertain, because it equally describes other lands in other government surveys outside of the state, how stands the question when it is shown that Mrs. Knight owned and occupied the lands thus numbered, which are in Alabama, and there is an absence of proof that either she or her husband owned or claimed any other lands, either in this state or elsewhere? It would be very unreasonable to presume they intended to convey lands they had no claim to. We rather presume they intended to convey lands they owned."

Compare Chattahochie, etc., v. Pilcher, supra; Cornett v. Creech, 100 S. W. 1188, 30 Ky. Law Rep. 1265; Hensley v. Burt, etc., 132 Ky. 112, 116 S. W. 316; Clark v. Aldrich, 162 N. C. 326; McDowell v. Carothers, 75 Or. 126, 146 P. 800; Whitaker v. Poston, 120 Tenn. 207, 110 S. W. 1019.; West v. Houston Oil Co., 46 Tex. Civ. App. 102, 102 S. W. 927; Gallup v. Flood, 46

Tex. Civ. App. 644, 103 S. W. 426; Smith v. Doe ex dem., Lord Jersey, 2 Brod. & Bing, 473, 550; Los Angeles County v. Hannon, 159 Cal. 37, 112 P. 878, Ann. Cas. 1912B, 1065; Davis v. Seybold, 195 F. 403, 115 C. C. A. 304.

The ruling in adjudged cases justified the court in admitting parol testimony showing the circumstances under which the deed was made; that is to say, that the grantor owned and had the right to convey H. & T. C. section 102, and did not own, and therefore had no right to convey, T. & N. O. section 102, for there was no such land to fit the latter description. The parties to the deed are presumed to have had reference to such fact in making the conveyance. Decker v. Stansberry, 249 Ill. 487, 94 N. E. 940, Ann. Cas. 1912A, 187; 18 C. J. 278, note 243; 18 C. J. 280, 281; Robinson v. Allison, 109 Ala. 409, 19 So. 837; Pearson v. Adams, 129 Ala. 157, 29 So. 977; Pollard v. Maddox, 28 Ala. 321.

[5] Now, the facts were that on March 7, 1905, Johnson executed a general warranty deed for $4,230, and for the further consideration that Carroll assume to pay the state of Texas all indebtedness due upon the land conveyed, which was described as the "south half of section 102, T. & N. O. Railroad Company survey, in Jasper county, Texas" (italics supplied). The evidence abundantly shows that the insertion of the letters or characters T. & N. O. was a mistake, and that the letters or characters H. & T. C. should have been employed. After having acquired the title to the S. ½ of section 102, Carroll, in pursuance of the stipulation in the deed, paid the state of Texas the principal and interest due on the S. E. ¼, H. & T. C. section 102, and the S. W. ¼ of H. & T. C. section 102 (being said S. ½ of section 102), and such payment was shown by the receipts from the state treasurer. The patent from the state of Texas, which could not have been issued until the entire purchase money was paid, was issued to Johnson and his heirs or assigns May 28, 1907; the patent recited, "said land having been purchased and fully paid for in accordance with the act of 1895 and amendments by the Act of May 19, 1897." Both patents were of the same date, and conveyed respectively the southeast quarter and the southwest quarter of H. & T. C. section 102.

On February 8, 1906, Carroll conveyed to the Miller-Link Lumber Company, of which the appellees are receivers, for the consideration of $23,908.78, a number of tracts of land; the fourth tract being described as "all of the south half of section 102, T. & N. O. Railroad Company, containing 320 acres, which said land was conveyed to George W. Carroll by B. W. Johnson, and which is more particularly described by reference to said deed and patent for said land." On July 27, 1922, Johnson executed a deed to the Miller-Link Lumber Company, reciting that it was made for the purpose of correcting the erroneous description given in his deed to Carroll, where the letters "T. & N. O." were inserted, instead of "H. & T. C.," and that the error in the description in said conveyance was by mistake of both the parties, and not in accord with their intention. This deed of correction conveyed to the Miller-Link Lumber Company and its receivers the south half of section 102, H. & T. C. Railroad Company survey; and a similar deed of correction was executed by Carroll to the Miller-Link Company and its receivers.

The commissioner of the general land office of Texas testified: "I have attached to my answers a map of Jasper county marked Exhibit A. The map is now in use and is a revision, made by the land office in 1918, of a map furnished this office by R. C. Wilcox, of Beaumont, on May 25, 1912. It purports to show all surveys in Jasper county. It is a correct map. There is not delineated on said map a tract of land designated as section 102, T. & N. O. R. R. Co. survey. There is delineated on said map a tract of land designated as section 102, H. & T. C. R. R. Co. survey, indicated with initials J. H. W. in red ink on the copy of said map of Jasper county, marked Exhibit A. There is not delineated on said map any other section of land in Jasper county identified as section 102." Further, that there was "no T. & N. O. survey No. 102 in Jasper county," but that the only tract of land situated in Jasper county, described in full or in part in the records of the general land office as section 102, "was section 102, certificate 25/1217, H. & T. C. Railroad Company," and that "there was no record in the office of the commissioner of the general land office of a patent having issued by the state or the republic of Texas to a tract of land referred to therein as section 102, T. & N. O. R. R. Co. survey in Jasper county. An examination of the records in the office of the commissioner of the general land office shows that the only section 102 in Jasper county patented to B. W. Johnson is the southeast quarter of section 102, certificate 25/1217, H. & T. C. Ry. Co., patented May 28, 1907, to Benjamin W. Johnson, and the

southwest quarter of said section 102, certificate 25/1217, H. & T. C. Ry. Co., patented to B. W. Johnson May 28, 1907."

Walker, chief clerk in the general land office, testified to the same facts given by Robison, the commissioner. Johnson testified that the south half of H. & T. C. section 102, Jasper county, was the one he sold to Carroll, and that "I did not own any survey known as T. & N. O. survey 102 in Jasper county. When I was negotiating with Mr. Carroll, there were other tracts of. land under consideration, besides H. & T. C. section No. 102,.that I was negotiating with him about. There were a number of other tracts. It was my purpose and intention to sell to Mr. Carroll all of the lands and timber I owned in Jasper county, all except my farm, which was on section T. & N. O. No. 12, and was patented to A. B. Smith. My negotiations covered all the lands and timber in the southern part of Jasper county, except T. & N. O. section 12 in the A. B. Smith survey." He also testified that the letters "T. & N. O.," inserted in the deed, were inserted by mistake, and that the description should have been "H. & T. C. section 102."

Carroll corroborated to the effect that in the sale and deed by Johnson it was his purpose to purchase, and that this was the understanding of Johnson at the time, H. & T. C. section 102. Link, of the Miller-Link Lumber Company, testified that, in his negotiations· leading to the deed from Carroll to the Miller-Link Lumber Company, he thought they were buying H. & T. C. section 102; further, that was what they intended to buy, and that the mistake was not discovered until after the delivery of the deed.

In the situation as detailed it was the duty of the court to declare the deeds under which the defendants, appellants, claimed, were invalid, and that the receivers were entitled to the lands covered by such worthless conveyances. It is not to be disputed that, so far as Johnson and Carroll are concerned, from whom appellees derive title, it was the duty of the court, when the intention of the parties, Johnson and Carroll and the appellees, at the time of the execution of the conveyances, was as disclosed by the evidence and fortified by the circumstances of ownership and the payment of taxes; to declare a correct description of the property intended to be conveyed to the Miller-Link Lumber Company represented here by the receivers; and it may be added that so far 'as such grantors were concerned they have recognized the error in description and executed deeds to the receivers rectifying the same.

Miller v. Hodges (Tex. Com. App.) 260 S. W. 168.

[6] But appellants insist that they are innocent purchasers for value of the lands involved. In his testimony Garland Smith, one of the appellants, said: "Of course we [meaning the defendants, appellants here (bracketed interpolation ours)] knew there was no 102 T. & N. O. railway survey in the [Jasper] county," when the deeds sought to be invalidated were procured by the appellants. Furthermore, it is not controverted that appellants Garland Smith and Louis Lanier were lawyers, under the style of Smith & Lanier, engaged in the business of making abstracts to the title of lands, and that as such they were employed by the appellees to prepare abstracts of title covering the lands involved in this suit, which land they knew the appellees claimed. They were aided in the abstracting work by their office help and other appellants. While so employed, they learned of the apparent defect of appellees' title to the land here involved, and deliberately proceeded to get their deeds without warranty, and under which they now claim. It is noted that at first Johnson refused to make any deed, but, when the appellants persisted in their effort to obtain the deed, he made them their deed, which was without .warranty, for $1,200, while the land was approximately worth $20,000.

It was established that Howell was associated with the firm of Smith & Lanier, the abstractor attorneys, in the work of abstracting the title for the appellees; that, while engaged in the service of preparing the abstracts, appellants acquired the information as to the condition of the title of the lumber company and its receivers to the land in controversy; and their evidence is convincing that they conspired for the purpose of acquiring a title adverse to the lumber company and its receivers, and procured a deed from B. W. Johnson purporting to transfer the land to Howell, who subsequently executed a deed of trust to W. P. Smith to secure the payment of a note executed by defendants Howell, Garland Smith, and Lanier.

The difference between the small sum paid by the appellants to Johnson for his deed without warranty and the real value of the property might be sufficient to defeat the defense of appellants that they were bona fide purchasers of the land. Dunn v. Barnum, 51 F. 355, 2 C. C. A. 265; Moore v. Sawyer (C. C.) 167 F. 826; Simmons Creek Coal Co. v. Doran, 142 U. S. 417, 12 S. Ct.

239, 35 L. Ed. 1063. But such fact alone need not be relied on to render futile the defense of innocent purchasers; for Smith & Lanier, the lawyers who were employed, as stated above, by appellees to make an abstract of the title of plaintiffs' lands, discovered while in such employment, and by virtue thereof, the defective description in the conveyance under which the appellees claimed, and that in violation of plain duty, not to say common honesty, appellants procured the making of the deeds under which they claim title, hence assert that they are innocent purchasers for value without notice of the appellees' title or claim. Their defense is an unworthy pretense and cannot avail. We refrain from further comment, except it is sufficient to say that the conduct of all the appellants, for each of them was party or privy to the transaction culminating in their pretended deeds of conveyance, was justly disapproved by the District Court, and that their deeds were rightfully canceled.

In reaching our conclusion, we have carefully considered the testimony of Johnson, who made the deed to appellants, that of Carroll, and that of all the other witnesses whose testimony was submitted, including that of the appellants. In the rulings complained of and in the decree entered in this cause on January 23, 1924, we find no error.

Accordingly, the decree is affirmed.