**UNITED STATES of America, Plaintiff,**

v.

**EASTMOUNT SHIPPING CORPORATION et al., SS SUSQUEHANNA, her engines, tackle, etc., in rem., Defendants.**

**No. 72 Civ. 1380.**

United States District Court, S. D. New York.

Feb. 8, 1974.

Paul J. Curran, U. S. Atty., Gilbert S. Fleischer, Atty. in Charge, Admiralty & Shipping Section, U. S. Dept. of Justice, for plaintiff.

Cardillo & Corbett, New York City, for defendants.

## MEMORANDUM

FRANKEL, District Judge.

On October 17, 1968, the Congress created the office of United States Magistrate under provisions now found in 28 U.S.C. § 631 et seq. The newly created magistrates reflected one of a number of efforts to deal creatively with problems of delay and congestion generated by the exponential increase in the volume of federal litigation. The magistrates were given jurisdiction over so-called petty criminal offenses and, by district court rule, could be assigned duties including but not restricted to service as special masters pursuant to Federal Rules of Civil Procedure 53, assistance in civil and criminal pretrial and discovery proceedings, and preliminary review of habeas corpus petitions. It was hoped and believed by the Congress and others that the responsible and prestigious office of magistrate would make it feasible to share some of the judicial burdens, to speed the rate of dispositions, and to promote the fairer administration of justice that might result from a less frenetic and crowded atmosphere.[1]

To speak only of the experience in a single district, it seems fair to say that the hopes of the Congress and other supporters are being realized in gratifying measure. The five Magistrates serving in this court have performed a valuable array of services in the management of pretrial and other aspects of our proceedings.[2]

As is true of other innovative and experimental enterprises, the exact scope of the magistrate's responsibilities remains a subject of some debate and un-

---

1. These purposes are concisely stated in the Senate Report accompanying the Federal Magistrates Act:

"S.945 is designed to create an upgraded lower tier judicial office that will be free from the present defects of the U. S. commissioner system, and that will be a truly useful component of our Federal judiciary. By raising the standards of the lowest judicial office by making the position more attractive to highly qualified individuals, and by increasing the scope of the responsibilities that can be discharged by that office, your committee hopes to establish a system capable of increasing the overall efficiency of the Federal judiciary by relieving the district courts of some of their minor burdens, while at the same time providing a higher standard of justice at the point where many individuals first come into contact with the courts."

S.Rep.No.371, 90th Cong., 1st Sess. 11 (1967). Referring specifically to the "additional duties" which may be assigned to magistrates under section 636(b) of the Act, the Report said:

"If district judges are willing to experiment with the assignment to magistrates of other functions in aid of the business of the courts, your committee believes that there will be increased time available to judges for the careful and unhurried performance of their vital and traditional adjudicatory duties, and a consequent benefit to both efficiency and the quality of justice in the Federal courts."

*Id.* at 26. See also Hearings on S.945 Before Subcomm. No. 4 of the House Comm. on the Judiciary, 90th Cong., 2d Sess., ser. 17, at 66–67, 73, 99 (1968).

2. See S.D.N.Y. General Rule 35, "Powers and Duties of Full Time and Part Time Magistrates."

That experimentation by district courts was envisioned was further reflected (see note 1, *supra*) in the remarks of Senator Tydings, Chairman of the Senate Subcommittee on Improvements in Judicial Machinery and major sponsor of the Act.

"The Magistrate Act specifies these three areas [§ 636(b)(1), (2) and (3)] because they came up in our hearings and we thought they were areas in which the district courts might be able to benefit from the magistrate's services. We did not limit the courts to the areas mentioned. Nor did we require that they use the magistrates for additional functions at all.

"We hope and think that innovative, imaginative judges who want to clean up their caseload backlog will utilize the U.S. magistrates in these areas and perhaps even come up with new areas to increase the efficiency of their courts."

House Hearings, *supra* note 1, at 81.

For a summary of the variety of functions now being assigned to magistrates see Belloni & Yegge, Personnel: Magistrates; Referees in Bankruptcy; Probation Officers, 59 F.R.D. 219, 220–221 (1973).

certainty. The courts in the several Circuits are divided on questions as to which kinds of matters properly may or should be confided to the magistrates either for decision or for recommended decision in the role of special master. See e. g., Knecht v. Gillman, 488 F.2d 1136, 1137, n. 1 (8th Cir. 1973):

> "Several courts, tacitly or expressly, condone reference of civil matters to magistrates. Dewrell v. Weinberger, 478 F.2d 699 (5th Cir. 1973); Remington Arms Co. v. United States, 461 F.2d 1268 (2d Cir. 1972); Givens v. W. T. Grant Co., 457 F.2d 612 (2d Cir. 1972). Other courts have seriously questioned or disapprove of the power of a court to refer matters to magistrates. Ingram v. Richardson, 471 F.2d 1268 (6th Cir. 1972); TPO, Inc. v. McMillen, 460 F.2d 348 (7th Cir. 1972). A split of authority also exists on reference of habeas petitions to magistrates. Some courts approve of the procedure, United States ex rel. Gonzalez v. Zelker, 477 F.2d 797 (2d Cir. 1973); Johnson v. Wainwright, 456 F.2d 1200 (5th Cir. 1972); Parnell v. Wainwright, 464 F.2d 735 (5th Cir. 1972), while others have disapproved of the practice, Wedding v. Wingo, 483 F.2d 1131 (6th Cir. 1973); Dye v. Cowan, 472 F.2d 1206 (6th Cir. 1972); Rainha v. Cassidy, 454 F.2d 207 (1st Cir. 1972)." [3]

Even within this single District, there appears to be some divergence among the individual judges in the uses made of the talents and energies of our magistrates. Like the judges, the members of the bar have experienced some contrariety of opinion in dealing with this topic.

Some matters that might not be suitable for assignment to magistrates over the objections of any party have been assigned on consent. In a substantial number of cases, there have been consent references to magistrates to hear and report on cases involving relatively small amounts of money, and the experience with this procedure appears to have been highly satisfactory to all concerned. It is scarcely incongruous that judicial officers entrusted with power to adjudge guilt or innocence in criminal cases, and to impose sentences of up to one year in prison and a fine of $1,000, should be found sitting by consent, at least to hear and report, in controversies involving $10,000 or so.[4]

Prompted by the experience of such cases in the recent past, this court in the instant case invited the parties to consider the suitability of a reference to a magistrate as special master to hear and report. This is an action by the United States against a carrier for alleged cargo damage, where the claimed amount is $10,010.47 and there is a claim over for $7,936.57. There is no suggestion that the case is momentous beyond its monetary stakes.

The invitation to consider a reference seemed especially suitable when addressed to representatives of the Government. The United States Attorney for this District and the Department of Justice more generally have recognized over the years their special roles as representatives of the busiest federal litigant and have been concerned, for other reasons as well as this one, to assist the courts in the efficient management of their dockets. Their notable contribu-

---

3. See also Devcon Corp. v. Woodhill Chemical Sales Corp., 455 F.2d 830 (1st Cir. 1972); Reed v. Board of Election Comm'rs of City of Cambridge, 459 F.2d 121 (1st Cir. 1972); United States ex rel. Henderson v. Brierley, 468 F.2d 1193 (3d Cir. 1972); Comment, An Adjudicative Role for Federal Magistrates in Civil Cases, 40 U.Chi.L.Rev. 584 (1973).

The propriety of allowing a magistrate to conduct a hearing and report, rather than

only to "[recommend] * * * whether there should be a hearing" on a habeas petition, is now before the Supreme Court. Wedding v. Wingo, 483 F.2d 1131 (6th Cir.), cert. granted, 414 U.S. 1157, 94 S.Ct. 914, 39 L.Ed.2d 109 (Jan. 21, 1974) (No. 846).

4. See 18 U.S.C. § 3401; S.D.N.Y. General Rule 35(a) and (b).

tions in the past are familiar to all who attend to problems of judicial administration.

It has been a matter of some surprise and regret, therefore, to be informed that a very recent regulation promulgated by the Acting Attorney General appears to preclude even a discretionary judgment whether the particular case would be an appropriate one for a reference. The new regulation, 28 CFR § 50.11, cites the case of La Buy v. Howes Leather Co., 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957), and Fed.R.Civ.P. 53(b) in support of its affirmation that "references, in the absence of some special condition, are not appropriate save in matters of account and the computation of damages * * *." It states, with a robust and unswerving devotion to principle: "Neither calendar congestion nor complexity of the issue involved justifies reference of the case to a special master." It goes on to direct that the Department of Justice will "take a firm position in opposition to [the] practice" of references which are said to have been increasing since the creation of the office of magistrate. Its concluding lines are as follows:

"* * * I therefore direct the legal Divisions of the Department not to agree to the designation of a Magistrate as a special master whenever they conclude that such designation would be in contravention of the Constitution or Rule 53(b).

"In appropriate cases and in accordance with Departmental procedures, those Divisions should seek relief from appellate courts by application for a writ of mandamus or otherwise." [5]

In obedience to the foregoing directive, the Department of Justice Attorney in charge of the instant case has reported to the court that he is "compelled to oppose the designation of a Special Master for the trial of this case." Despite its disappointment over the rigid and mechanical departmental stance leading to this automatic position, the court has concluded that reference to a magistrate should not be ordered over opposition.

If the question involved only a comparison of the Magistrates Act with the Department of Justice regulation, a different conclusion might be warranted. The regulation rests heavily upon the decision in La Buy v. Howes Leather Co., *supra,* and that case involved a situation notably different from the one here. In the cited case, the disputed reference covered two large, complex, multi-party antitrust cases. Against a background that included a seemingly extensive course of such delegations, the district court had selected as master an active practitioner, the likely result being delay rather than expedition of the litigation. See 352 U.S. at 253 n. 5, 77 S.Ct. 309. The master thus chosen to act for the judge was a "temporary substitute * * * ordinarily not experienced in judicial work." *Id.* at 259, 77 S.Ct. at 315. It is not necessary to labor the contrast between those facts and the proposed reference of a modest damage claim to a full-time judicial officer of the United States, an official paid a fixed federal salary for his services rather than fees chargeable to the litigants.

Nevertheless, there are other considerations that seem decisive against an unconsented reference in this case. While it undertook to deal innovatively with the problem of court congestion, Congress was persuaded to move with caution in defining the new role of magistrate. 28 U.S.C. § 636(b)(1), in an initial draft, said the powers and duties of the magistrate could include "service as a special master in an appropriate civil action * * *." [6] In its setting, that

---

5. The new regulation was dated December 4, 1973, and was signed by Acting Attorney General Robert H. Bork.

6. S.3475, 89th Cong., 2d Sess. (1966).

authorization might have been interpreted as being subject to the limiting doctrine of La Buy v. Howes Leather Co. as well as Fed.R.Civ.P. 53(b). But in an evident desire to allow no mistake about this, the legislators followed a Judicial Conference recommendation and added the qualifying language: "pursuant to the applicable provisions of this title and the Federal Rules of Civil Procedure for the United States district courts * * *." The Senate Report made explicit the purpose to carry forward existing restrictions upon references.[7]

Whatever differences there have been over the scope of magistrates' powers, it seems generally agreed that we are not free to disregard either La Buy v. Howes Leather Co. or Rule 53(b). To this extent at least, the Department of Justice regulation seems well-grounded. This may mean that there is need for new legislation, or at least for revision of the Rule, if the full potential of our magistrates' talents and energies is to approach realization.

It might have been hoped, however, that the express and repeated invitation from Congressional spokesmen (see notes 1 and 2, *supra*) to "experiment" would be accepted by all responsible officials with some measure of the enthusiasm that has been widely exhibited by both the bar and the bench. It may be permissible still to hope that the uncompromising position of the recent departmental regulation may be open to reexamination. In the meantime, however, the court accepts the position taken for the United States—that a reference to one of our distinguished Magistrates of its claim for $10,010.47 would, as the law now stands, be an impermissible "abdication of judicial decisionmaking powers."

---

7. "A magistrate may be assigned to serve as a special master in an appropriate civil action, under the conditions imposed by pertinent provisions of Federal Rules of Civil Procedure. This latter requirement was added as a clarification in response to comments made by the Committee on the Administration of the Criminal Law of the Judicial Conference. In particular, rule 53(b) provides that a reference to a master shall be the exception and not the rule; that in actions tried by a jury a reference shall be made only when the issues are complicated; and that in actions tried without a jury, save in matters of account, a reference shall be made only upon a showing that exceptional circumstances require it. These conditions, which in essence reflect the rule laid down by the Supreme Court in La Buy v. Howes Leather Company, 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957), protect against any abdication of the decisionmaking responsibility that is properly that of the district courts."
S.Rep. *supra* note 1, at 25.
For the recommendations of the Judicial Conference Committee explicitly making its approval of section 636(b)(1) subject to the foregoing qualifications, see the 1966 and 1967 Reports of the Committee on the Administration of the Criminal Law, reprinted in Hearings on S.3475 and S.945 Before the Subcomm. on Improvements in Judicial Machinery of the Senate Comm. on the Judiciary, 89th Cong., 2d Sess. and 90th Cong., 1st Sess., at 241j-45 (1967); Statement of the Hon. George Edwards, House Hearings, *supra* note 1, at 146-48.