**Victor DeCOSTA**

v.

**COLUMBIA BROADCASTING SYS-TEM, INC., et al.**

Civ. A. No. 3130.

United States District Court,
D. Rhode Island.

Sept. 23, 1974.

Alan T. Dworkin, Leonard Michaelson, Providence, R. I., for plaintiff.

Knight Edwards, Edwards & Angell, Providence, R. I., Eugene L. Girden, Coudert Brothers, New York City, for defendants.

## OPINION

PETTINE, Chief Judge.

The question being decided by the Court today is whether an order of reference to the Magistrate of this district for "hearing and determination" of a civil non-jury case by stipulation of the parties and counsel was ultra vires and beyond the jurisdiction delegated to United States Magistrates under Title 28 U.S.C. § 636(b); violative of defendants' constitutional rights and void ab initio.

A three count complaint was filed in this controversy and by agreement of the parties Count One was tried to a jury before another judge of this Court with Counts Two and Three, dealing with infringement of a claimed common law service mark and alleged unfair competition, reserved for disposition by the Court sitting without a jury.

On August 6, 1973, subsequent to the trial on Count One, the parties executed a stipulation that Counts Two and Three be determined by this judge on the basis of the trial transcript including all exhibits, together with a stipulation of additional testimony. On October 5, 1973 by agreement of all the parties concerned an order was entered referring the matter to the Magistrate under authority of 28 U.S.C. § 636.[1]

Briefs were submitted to the Magistrate and oral arguments, electronically recorded, were considered not only on the merits of the case but also on motions directed to him by the defendants to add the affirmative defense of res adjudicata. On April 15, 1974 a report was filed by the Magistrate setting forth his findings of fact and conclusions of law sustaining the plaintiff's position. On April 19, 1974 for the first time the defendants objected to this procedure and argue "they nor their attorneys were actually aware, or had any reason to be aware of their lack of capacity to ratify the reference . . . that consent to a procedure that is statutorily *ultra vires* and constitutionally infirm in the first instance is without effect." (Defs.' memo, pp. 16–17). This Court granted

---

1. "ORDER

Pursuant to stipulation of the parties on each side and of counsel on each side, the above captioned case is referred, under authority of 28 U.S.C. 636, to United States Magistrate Jacob Hagopian for hearing and determination to be had on or before November 5, 1973."

a stay of all further proceedings pending determination of the validity of the referral.

The need to relieve the burdening case load of federal courts has spawned the Federal Magistrates Act which became law on October 17, 1968. The assistance to district judges which a magistrate can render as set forth in the Magistrates Act encompasses a variety of functions including the broad power vested in the court to assign to magistrates as "Article 1[2] judges," "such additional duties as are not inconsistent with the Constitution and laws of the United States."[3] Through this mechanism judges can best relieve the congestion of overcrowded dockets.[4] How-

2. The use of the title "Article I Judge" merely indicates that the magistrate's powers stem solely from the Congress, by legislative enactment, and not from Article III of the Constitution. This does not mean, however, that the position of United States Magistrate constitutes "[a] Tribunals inferior to the Supreme Court" pursuant to Article I, Section 8, Clause 9 of the Constitution. As the Supreme Court made clear in Glidden Company v. Zdanok, 370 U.S. 530, 82 S.Ct. 1459, 8 L.Ed.2d 671 (1962):

"The Constitution nowhere makes reference to 'legislative courts.' The power given Congress in Art. I, § 8, cl. 9, 'To constitute Tribunals inferior to the Supreme Court,' plainly relates to the 'inferior Courts' provided for in Art. III, § 1; it has never been relied on for establishment of any other tribunals."

370 U.S. at 543, 82 S.Ct. at 1469.

The Supreme Court in *Glidden* went on to explain the test of when a tribunal is to be recognized as one created under Article III:

". . . whether a tribunal is to be recognized as one created under Article III depends basically upon whether its establishing legislation complies with the limitations of that article; whether, in other words, its business is the federal business there specified and its judges and judgments are allowed the independence there expressly or impliedly made requisite."

370 U.S. at 552, 82 S.Ct. at 1474.

And, of course, the powers enumerated in Article III, Section 2 of the Constitution can be exercised only by judges who are afforded the protections of Article III, Section 1 (tenure for good behavior and assurance against diminution of salary). It is clear that the magistrate is not granted Article III powers nor is he afforded Article III protections. He is granted certain powers by Congress only as supportive of the district judge, and not as an independent Article III tribunal. Since he is not vested with the powers enumerated in Article III, his duties are limited to those provided for in the statute by which the office was created. I make no pretense of holding that a magistrate has the power, as an independent tribunal, to exercise final decision-making authority as to purely Article III "cases" or "controversies." However, as noted *infra*, the Magistrates Act authorizes the magistrate to perform such additional duties as are not inconsistent with the Constitution and laws of the United States. The Supreme Court, in Kimberly v. Arms, 129 U.S. 512, 9 S.Ct. 355, 32 L.Ed. 764 (1889), discussed in more detail *infra*, teaches us that a *consensual* reference to a non-article III officer, with review in the district court limited to the question of "manifest error" is an entirely constitutional delegation and *not* an abdication of power by the Article III judge.

3. 28 U.S.C. § 636(b) provides:

"(b) Any district court of the United States, by the concurrence of a majority of all the judges of such district court, may establish rules pursuant to which any full-time United States magistrate, or, where there is no full-time magistrate reasonably available, any part-time magistrate specially designated by the court, may be assigned within the territorial jurisdiction of such court such additional duties as are not inconsistent with the Constitution and laws of the United States. The additional duties authorized by rule may include, but are not restricted to—

(1) service as a special master in an appropriate civil action, pursuant to the applicable provisions of this title and the Federal Rules of Civil Procedure for the United States district courts;

(2) assistance to a district judge in the conduct of pretrial or discovery proceedings in civil or criminal actions; and

(3) preliminary review of applications for posttrial relief made by individuals convicted of criminal offenses, and submission of a report and recommendations to facilitate the decision of the district judge having jurisdiction over the case as to whether there should be a hearing."

4. The broad goal of the Magistrates Act was stated in the House Report on the bill:

". . . to cull from the ever-growing workload of the U. S. district courts matters that are more desirably performed by a lower tier of judicial officers." H.Rep. No.1629, 90th Cong., 2d Sess. (U.S.Code Cong. and Admin.News, 1968, at p. 4255).

ever, the extent of the judges' authority to delegate and the scope of review are not entirely clear. Both are being defined through the evolving process of decisional law which, since the enactment of the Magistrates Act, has not spoken to the precise issues at stake in this controversy.[5]

This entire discussion of the legality and constitutionality of the reference to the United States Magistrate made herein must be prefaced by citation to the myriad of provisions pursuant to which the reference was made. The order of reference (note 1, *supra*) was not simply an *ad hoc* determination by the Court, but was premised not only on the consent of the parties, but in addition on the following statutory provisions and rules:

(1) The United States Magistrates Act, 28 U.S.C. § 631 et seq., especially § 636(b), (note 3, *supra*);

(2) Rule 32 of the Local Rules of the United States District Court for the District of Rhode Island;[6]

---

[5] It should be noted that the recent Supreme Court decision in Wingo v. Wedding, 418 U. S. 461, 94 S.Ct. 2842, 41 L.Ed.2d 879 (1974) is not pertinent to the instant matter. In *Wingo* a magistrate, by local rule of the district court, was authorized to conduct evidentiary hearings in federal habeas corpus actions. The Supreme Court held that the Habeas Corpus Act was an express legislative determination that such hearing must be held by a "judge" of the district court, and on that basis found the local rule to be contrary to the Congressional mandate. The Court never reached the question of whether Congress could enact Constitutionally permissible legislation expressly giving a magistrate the power to hold evidentiary hearings on petitions for habeas corpus. *Id.* at n. 4.

Nor has the First Circuit expressly ruled on the question of consensual referrals to a magistrate in civil matters.

In O'Shea v. United States, 491 F.2d 774 (1st Cir. 1974) a habeas petition was referred by the district court to a magistrate who recommended that the case be dismissed, without discussing any law on the subject. The court, thereupon, without affording the petitioner an opportunity to be heard, dismissed the petition without opinion. While the court's holding with reference to the power of a magistrate to hold evidentiary hearings on habeas corpus petitions has been modified by the Supreme Court's holding in *Wingo*, *supra*, the court expressly approved the use of the magistrate to report and recommend to the district court on applications for post-trial relief made by individuals convicted of criminal offenses, although the particular procedure followed by the magistrate therein was criticized. The court's holding goes no further than defining a magistrate's power, and the weight to be given a magistrate's report by the district court, under 28 U.S.C. § 636(b)(3) (applications for post-trial relief). No mention was made concerning consensual references in civil matters.

In Rainha v. Cassidy, 454 F.2d 207 (1st Cir. 1972), the district court was criticized for a "pro forma laying on of hands" in approving the magistrate's findings of fact in a habeas proceeding. Again, the court was not faced with a consensual reference to the magistrate in which the parties retained a right to review by the district court. Also in Reed v. Board of Election Commissioners of City of Cambridge, 459 F.2d 121 (1st Cir. 1972), the court disapproved of a blanket approval by the district court of a magistrate's report on a motion for preliminary injunction without itself having the record before it. Once again, an entirely different issue is presented regarding the consensual reference herein, in that the court presently has before it the entire record that the magistrate had before him, and the magistrate's findings are subject to review by this Court.

[6] **RULE 32**
**United States Magistrates**

(a) *Duties in general.* Full-time United States Magistrates of this district or, where there is no full-time magistrate reasonably available, any part-time magistrate specially designated by the court, shall, when directed by the court:

(1) Serve as a special master in appropriate civil actions pursuant to the applicable provisions of Title 28 United States Code and the Federal Rules of Civil Procedure for the United States District Courts; and

(2) Assist the district judges in the conduct of pretrial or discovery proceedings in civil or criminal actions; and

(3) Review applications for post-trial relief made by individuals convicted of criminal offenses, and submit reports and recommendations thereon to facilitate the decision of the district judge having jurisdiction over the case as to whether there should be a hearing; and

(4) Perform such other duties as are not inconsistent with the Constitution and laws of the United States and as may be assigned by the court.

(3) The "Standing Order Providing for the Utilization of United States Magistrates" of the United States District Court for the District of Rhode Island, as amended.[7]

The background of the reference made herein is highlighted by two very important factors, which will be developed more fully *infra:*

(1) The consent of the parties to a "hearing and determination" by the Magistrate, including the defendants' specific · invocation of the magistrate's powers subsequent to the reference with regard to a motion to amend, and;

(2) The opportunity reserved to the parties for review of the Magistrate's findings by the referring judge.

On the basis of these two factors, the authority cited by the defendants can clearly be distinguished. The significance of the consent by the parties cannot be ignored nor be negated by the unbecoming statement of defense counsel that, "Neither they [clients] nor their attorneys were actually aware, or had any reason to be aware of their lack of capacity to ratify the reference." Such self deprecation after adverse findings might have served a useful purpose if this Court could accept the premise that the delegation was in the first instance an unconstitutional abdication of this Court's judicial function as an "Article 3 judge."

To me decisional law and the Magistrates Act itself [8] leaves little doubt that

(b) *Powers.* Unless otherwise provided by Fed.R.Civ.P. 53 or other statute or rule, the magistrate shall have authority to conduct the proceedings specified in the order of reference and to make such orders as may be incidental or necessary to the completion thereof, subject to review by the judge as herein provided.

(c) *Filing of report and records.* Upon conclusion of the hearing, the magistrate shall file with the clerk his findings, report and recommendations, a certificate of service thereof upon the parties, and any waiver by the parties of appeal to the judge. He shall separately lodge with the clerk all papers, documents, exhibits and briefs presented during the reference hearings.

(d) *Objections; review.* Any party who has not waived an appeal to the judge may serve and file written objections to the magistrate's report within 5 days after service of the report. Opposition to the objections shall be served and filed within 5 days after service of the objections. The clerk shall thereupon promptly set and notice the review hearing to be disposed of by the judge to whom the case is assigned.

(e) *Submission of proposed order.* Within ten days after disposition of the objections filed pursuant to subparagraph (d) hereof, counsel shall submit a proposed form of Order in accordance with the court's ruling.

7. Paragraph 12 of the Standing Order, effective May 7, 1973, provides:

12. DESIGNATION OF MAGISTRATE TO ASSIST DISTRICT JUDGES

Pursuant to the rule making power conferred on the Court by 28 U.S.C. 636, the Court may, without further formal order, from time to time refer civil and criminal motions to the magistrate as it deems proper for hearing, determination, recommendation, or report, and the magistrate shall render such other assistance to a district judge of the Court as may be directed of him by the Court.

The Standing Order was amended on June 4, 1973, adding Paragraph 13.1:

13.1. RECONSIDERATION OF MAGISTRATE'S RULING BY DISTRICT JUDGE

A magistrate's ruling on a motion, not incident to the exercise of his trial jurisdiction, shall be final and conclusive unless a party thereto moves for reconsideration by a district judge. A motion for reconsideration shall be made within five (5) days of the magistrate's ruling. Reconsideration shall not be *de novo* but shall be the same as on an appeal on a question of law.

8. "Since full-time magistrates under the new system are supposed to spend all their time on their official duties, it is appropriate to allow the district court to make whatever use of their services as it sees fit, in addition to the functions that the statute assigns to them. . . . The use of magistrates for duties that do not require the employment of an Article III judge, *or in cases in which the parties consent to the use of a magistrate*, may do much to increase the efficiency of the Federal Courts." (emphasis added)

Hearings Before the Subcomm. on Improvements in the Judicial Machinery of the Sen-

consensual references in civil matters are authorized.

### Extent of Order of Reference

It has been stated, with respect to orders of reference to a master, that such an order is "at once the chart and limitation of the master's authority." Ferguson Contracting Co. v. Manhattan Trust Co., 118 F. 791, 794 (6th Cir. 1902). See 5A, J. Moore, Federal Practice, paragraph 53.06 at 2966. The same is undoubtedly true as to references to a magistrate. While the instant order denominated the reference as one "for hearing and determination," it is clear that this order, when read in light of the Local Rules and the Standing Order, see notes 6 and 7 *supra,* reflects that the parties consented to a hearing and determination by the Magistrate, which, of course, is subject to review by the referring judge.[9] The issue to be determined as discussed *infra* is the standard of review. The defense argument that this consensual reference was *ultra vires* as a reference for *final* determination is simply without merit.

### Authority to Refer Under Federal Magistrates Act Broader Than Under Rule 53, Fed.R.Civ.P.

Defendants press their objection to the reference herein beyond the above erroneous assumption that the magistrate was delegated the authority to enter a final judgment not subject to review by the district judge. Such further objection is apparently premised on the theory that reference to the magistrate in a civil action of matters going to the merits of the litigation must be made, if at all, in accordance with the strict requirements of a reference to a master under Rule 53, Fed.R.Civ.P. In particular, the defendants attach over-

ate Comm. on the Judiciary on S. 3475, 89th Cong., 2d Sess. 14 (1967).
See Comment, "An Adjudicative Role for Federal Magistrates in Civil Cases," 40 U. Chi.L.Rev. 584 (1973).

9. That the wording of the order of reference may have lacked precision on the question of

riding consideration to the fact that, under Rule 53(b) "[a] reference to a master shall be the exception and not the rule" and that no "exceptional conditions" existed in the instant case to justify the reference, despite consent of the parties. See LaBuy v. Howes Leather Company, 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957) (congested calendar not "exceptional condition" justifying reference to master under Rule 53(b)).

Defendants overlook, however, the fact that reference to a United States Magistrate pursuant to 28 U.S.C. § 636(b) may be broader than reference to a master under Rule 53(b), and indeed should be in order to accomplish the broad goals that the Magistrates Act was designed to facilitate.

In Yascavage v. Weinberger, 379 F. Supp. 1297 (M.D.Pa., 1974), the court, in considering an appeal from an administrative decision denying certain Social Security benefits to petitioner, referred the Government's motion for summary judgment to the magistrate for report and recommendation to the district judge. Upon motion to vacate the referral, on the grounds that it exceeded the parameters of a referral to a master as embodied in Rule 53(b), the court in upholding the referral made particular note of the following language from the statute:

"[the magistrate] may be assigned . . . such *additional duties as are not inconsistent with the Constitution and laws of the United States.* The additional duties authorized by rule *may include, but are not restricted to*

(1) Service as a special master in an appropriate civil action . . . ."
(emphasis added)

review by the district court, such "uneasiness with the wording of an order is a flimsy basis on which to mount a constitutional attack." Yascavage v. Weinberger, 379 F. Supp. 1297, at 1303 (M.D.Pa., 1974).

The court in *Yascavage* in criticizing and specifically rejecting the narrow reading of the Act in Ingram v. Richardson, 471 F.2d 1268 (6th Cir. 1972) noted that the limitation of magistrate utilization to the duties enumerated in § 636(b) was an "unduly restrictive" view of the Act in light of the "additional duties" language highlighted above.[10]

> "There is no indication [in the legislative history of the Magistrate's Act] . . . that it was considered that *all* matters referred to a magistrate are referrals as a master under Rule 53(b), and the language of § 636(b), of course, would not justify any such construction of the Act." [11]

Thus, § 636 is an express legislative recognition that the magistrate may be assigned any duties which are not inconsistent with the Constitution and laws of the United States. The issue herein is therefore quite narrow—is the reference to a United States Magistrate, of cross-motions for summary judgment, upon the express consent of the parties with the right of review to the referring judge, a delegation of authority in contravention of the Constitution and laws of the United States. I find the reference made herein was entirely within the scope of § 636(b) and was entirely consistent with the Constitution.

Defendants rely heavily on the Seventh Circuit's decision in TPO, Incorpo-

---

10. The court in *Yascavage* also noted that a Social Security appeal was a particularly appropriate case for reference to a magistrate, in that it is to be decided on an administrative record and thus involves no trial, no introduction of evidence and no witnesses to be heard. All the material before the magistrate was thus equally available to the reviewing judge, who would not be deprived of any opportunity to weigh the credibility of live witnesses. Compare Wingo v. Wedding, *supra*.

In the instant case the factual record was equally complete before reference to the magistrate occurred. The majority of applicable evidence was contained in the transcript and exhibits of the trial on Count I of the complaint, held before Judge Edward W. Day in 1966. Additional testimony was set forth in a stipulation filed June 7, 1973. Thus, this Court in reviewing the magistrate's finding has before it the entire record upon which the magistrate made his findings and, in addition, the tape recordings of the argument before the magistrate.

This case, as in *Yascavage*, did not involve the holding of an evidentiary hearing where the resolution of credibility of witnesses may be important. Compare Rainha v. Cassidy, *supra* (habeas corpus proceeding referred to magistrate in which Court of Appeals questioned the propriety of a magistrate conducting the evidentiary hearing) ; Reed v. Board of Election Commissioners of City of Cambridge, *supra* (magistrate held evidentiary hearing as to motion for preliminary injunction—district court criticized for approving report of magistrate without having record before it).

11. Referring specifically to the "additional duties" which may be assigned to the magis-

trate under section 636(b) of the Federal Magistrates Act, the Senate report accompanying the Act said:

"If district judges are willing to experiment with the assignment to magistrates of other functions in aid of the business of the courts, your committee believes that there will be increased time available to judges for the careful and unhurried performance of their vital and traditional adjudicatory duties, and consequent benefit to both efficiency and the quality of justice in the Federal Courts." S.Rep. No. 371, 90th Cong. 1st Sess. 26. (hereinafter, "Senate Report") .

The remarks of Senator Tydings, Chairman of the Senate Subcommittee on Improvement in Judicial Machinery and major sponsor of the Act are also instructive:

"The Magistrates Act specifies these three areas [§ 636(b)(1), (2) and (3)] because they came up in our hearings and we thought they were areas in which the district courts might be able to benefit from the magistrate's services. We did not limit the courts to the areas mentioned. Nor did we require that they use the magistrates for additional functions at all.

"We hope and think that innovative, imaginative judges who want to clean up their caseload backlog will utilize the U. S. magistrates in these areas and perhaps *even come up with new areas to increase the efficiency of their courts.*" (emphasis added)

Hearings on S. 945 before Subcomm. No. 4 of House Comm. on the Judiciary, 90th Cong., 2d Sess., ser. 17, at 81.

rated v. McMillan, 460 F.2d 348 (7th Cir. 1972), in which case the court concluded

> ". . . that magistrates have no power to decide motions to dismiss or motions for summary judgment, both of which involve ultimate decision making, and the district courts have no power to delegate such duties to magistrates."

While the broad holding in *TPO* appears to favor defendants' position, I cannot accept this decision as precedent for the case at bar, for a closer examination of the entire opinion reveals a number of facts which would distinguish the reference made therein from the instant case. In *TPO* the decision to refer the case to the magistrate was that of the court, without the consent of the parties. The party opposing the reference made an immediate motion to vacate the reference, which was denied. After the magistrate entered an order denying the motion to dismiss (the subject matter of the reference), the party opposing the reference immediately sought relief from the order of reference by means of a mandamus petition to the appellate court. At the time of the reference, neither the local rules or the order of reference provided for review of the magistrate's finding by the district court. A totally dissimilar situation is before me, in that total and unfettered consent of the parties was obtained prior to the reference, no efforts were made to vacate the order of reference until the Magistrate had completed his assignment, and right to seek review from the referring judge was preserved.[12]

■ Analogously, consensual references to a master to hear and decide all issues and to report his findings of fact and law have previously been found not to offend the Constitution, at least insofar as a right to review in the district court is preserved. See Kimberly v. Arms, 129 U.S. 512, 9 S.Ct. 355, 32 L. Ed. 764 (1889); Davis v. Schwartz, 155 U.S. 631, 15 S.Ct. 237, 39 L.Ed. 289 (1895); Eichberg v. United States Shipping Board Emergency Fleet Corporation, 51 U.S.App.D.C. 44, 273 F. 886 (D.C.Cir.1921). It is true that these cases enumerated a more restrictive standard of review in the district court in situations in which reference to the master was consensual. It is equally true that such a distinction as to standard of review enumerated in those cases

12. I recognize that dicta in the *TPO* case might arguably blunt the distinctions I have outlined as to the effect of consent of the parties and review by the district judge. 460 F.2d at 360–361, n. 62. As to review by the district court, I am convinced that Congress intended to sanction a wide variety of references to the magistrate so long as review to the district court was insured. See Senate Report, *supra*, at 27. The Second Circuit has explicitly approved the reference of dispositive motions to the magistrate under the Local Rules of the United States District Court for the District of Connecticut which provide for review of the magistrate's "proposed memorandum of decision" by the district judge who may adopt, modify or reject the magistrate's findings in whole or in part. Remington Arms Company, Inc. v. United States, 461 F.2d 1268 (2d Cir. 1972) (motion for summary judgment); Givens v. W. T. Grant Company, 457 F.2d 612 (2d Cir. 1972) (motion to dismiss), vacated on other grds. 409 U.S. 56, 93 S.Ct. 451, 34 L.Ed.2d 266 (1972).

As to the effect of consent, the *TPO* court recognized that ". . . consent of all parties would change the situation somewhat, [but] it would introduce other difficulties." 460 F.2d at 361 n. 62. The only "other difficulty" mentioned by the court was the danger of "coerced consents" by parties who would fear inciting the wrath of a district judge by refusing to consent to referral thus intruding upon the judge's time. Such a fear, while at best speculative, evidences an uncanny lack of faith in the integrity of the federal judiciary. Even if an allegation of "coerced consent" were arguable in a particular case, appellate review rather than a broad prohibition against consensual references would appear to be the wiser course. Other courts have recognized that certain matters delegated to magistrates over the objections of a party would be permissible with consent of the parties. See United States v. Eastmount Shipping Corporation, 62 F.R.D. 437 (S.D.N.Y.1974).

has been abrogated by Rule 53(e)(4), Fed.R.Civ.P.[13] However, the precedential value of the decision in Kimberly v. Arms, *supra*, and its progeny is *not* that they represent the current status of the law with regard to reference to a master, but more importantly for our purpose, that they stand for the clear approval by the Supreme Court that a consensual reference to other than an Article III judge, even if accompanied by less than *de novo* review by the district court, is not inconsistent with the Constitution of the United States. Viewed in this light it is clear that a consensual reference to a magistrate, even if beyond the rigid requirements of a Rule 53 reference, is still a *constitutional* reference within the parameters of the "additional duties" provision of the Magistrates Act.

I fail to find the rationale behind the restrictions on Rule 53 references to masters to be applicable to consensual references to the magistrate. In LaBuy v. Howes Leather Company, *supra*, the court reiterated the admonition in Rule 53 itself that reference to a master "shall be the exception and not the rule" and that "save in matters of account and of difficult computation of damages, a reference shall be made only upon a showing that some exceptional condition requires it." The court clearly favored,

". . . trial before a regular, experienced trial judge rather than before a temporary substitute appointed on an *ad hoc* basis and ordinarily not experienced in judicial work."

352 U.S. at 259, 77 S.Ct. at 315.

In enacting the Magistrates Act, however, Congress has expressly provided for safeguards to the dangers of delay, incompetency and conflict of interest which the Supreme Court in *LaBuy* found endemic in the system of reference to a master. See United States v. Eastmount Shipping Corporation, *supra*.[14] It is easy to see, therefore, why Congress did not limit the use of a magistrate to service as a master but indeed broadened the potential scope of his authority to include "additional duties not inconsistent with the Constitution and laws of the United States."

Furthermore, even as to references to a master, *LaBuy* does not address itself to the question of a consensual reference, since the reference therein was made by the court *sua sponte* without the consent of the parties and was contested by *all* parties *prior* to compliance with the order through motions to vacate the reference. Upon denial of those motions in the district court, the parties sought immediate relief in the Court of Appeals by seeking mandamus against the referring judge. As in *TPO, supra*, the question of a consensual reference to a duly authorized Article I judge in a civil case was simply not dealt with by the Supreme Court in *LaBuy*.

---

13. Rule 53(e)(4), Fed.R.Civ.P., provides in pertinent part:

"The effect of a master's report is the same whether or not the parties have consented to the reference. . . ."

See 5A, J. Moore, Federal Practice, paragraph 53.15:

"Any prior case law to the effect that a reference [to a master] with consent compels extraordinary weight to be given to the master's report is no longer in point, whether the case be a jury or non-jury case."

14. The Magistrates Act 28 U.S.C. § 631 et seq. provides, *inter alia*:

1) that appointment shall be by concurrence of a majority of all judges in the district;

2) that magistrates must be a member of the bar;

3) that he not be related by blood or marriage to a judge of the appointing court;

4) that full-time magistrates not engage in the practice of law and that part-time magistrates so limit their practice so as to avoid conflicts of interests;

5) fixed term, subject to removal only for incompetency, misconduct, neglect of duty or physical or mental disability;

6) fixed salary and full-time magistrate's salary cannot be reduced during term;

7) clerical and secretarial assistance provided by the Government;

8) training programs at Federal Judicial Center.

## Consent and Waiver

The assumption behind a "waiver" theory is that the reference was initially invalid but that the defendant, by consenting to and acquiescing in the magistrate's consideration of the issues, defendant waived any objection to the reference itself (wholly apart from objections on the merits to the findings of fact and conclusions of law by the magistrate). As discussed previously, I do not find that the reference was improper. However, even under a restrictive view of the Magistrates Act, I find plentiful support in the decisional law to the effect that the consent of the defendants to reference to a master under Rule 53, without timely objection to the order of reference, constitutes a waiver of objections to the reference. Mc-Graw-Edison Company v. Central Transformer Corporation, 308 F.2d 70 (8th Cir. 1962); First Iowa Hydro Electric Cooperative v. Iowa-Illinois Gas and Electric Company, 245 F.2d 613 (8th Cir.) 355 U.S. 871, 78 S.Ct. 122, 2 L.Ed. 2d 76 (1957); Hart v. Williams, 91 U.S.App.D.C. 340, 202 F.2d 190 (1952); Westchester Fire Insurance Co. v. Bringle, 86 F.2d 262 (6th Cir. 1936); Smith v. Brown, 3 F.2d 926 (5th Cir. 1925).[15] There is simply no support for defendants' theory that a consensual reference to a master under Rule 53, even if arguably beyond the "exceptional conditions" language of the Rule, is void ab initio.[16] Nor is the analogy to the rule that subject matter jurisdiction cannot be conferred on a court by consent valid as to a consensual reference to a magistrate.[17]

15. "Failure to make timely objection to the appointment of a Master either at the time of the order or promptly thereafter constitutes a waiver of error and objections made only to the Master are unavailing." First Iowa Hydro Electric Cooperative v. Iowa-Illinois Gas and Electric Company, supra, 245 F.2d at 628.

16. Defendants cite Wilver v. Fisher, 387 F.2d 66 (10th Cir. 1967); Bartlett-Collins Company v. Surinam Navigation Company, 381 F.2d 546 (10th Cir. 1967); and Cademartori v. Marine Midland Trust Company of New York, 18 F.R.D. 277 (S.D.N.Y.1955). for the proposition that consent cannot validate an otherwise wrongful reference to a master under Rule 53. In Wilver, the Court was especially concerned with the fact that the consensual reference therein gave to the master extraordinary power to restate the parties' interrogatories and to recommend the answers thereto. The case stands for the proposition that the delegation of such extraordinary powers, which are properly exercisable only by the parties themselves, cannot be assumed by a master even upon consent of the parties. Wilver lends little support to the theory that any abuse of discretion in referring to a master upon consent of the parties is void ab initio.

In Bartlett-Collins, supra, there is dicta which strongly disapproves of references to a master in the absence of exceptional circumstances, even upon consent of the parties. Yet, the fact that the master's report, and subsequent approval and confirmation of that report was affirmed on the merits by the appellate court belies defendant's argument that such a reference is void ab initio.

Finally, in Cademartori, supra, the parties stipulated that the master should finally determine all issues and enter judgment thus "[placing] the Court in the position of being committed in advance to the decision of the Master already named, without the possibility of any recourse to the evidence upon which the Master may have acted. . . ." 18 F.R.D. at 278–279. The reference herein involved no such stipulation by the parties, and review by the district court, including access to all the evidence and argument heard by the magistrate, has been preserved.

17. The case law does not support the proposition that an improper reference to a master, with consent of the parties, is a jurisdictional defect, at least insofar as the district court retains the power to review the master's findings before judgment is entered. The weight of authority appears to be that a reference to a master is "a procedural matter to which personal objection should have been made. . . ." McGraw-Edison Company v. Central Transformer Corporation, supra, 308 F.2d at 72 n. 3; First Iowa Hydro Electric Cooperative v. Iowa-Illinois Gas and Electric Company, supra; Hart v. Williams, supra; Smith v. Brown, supra. Indeed, in Bartlett-Collins Company v. Surinam Navigation Company, supra, cited by the defendants, the appellate court disapproved of the reference despite consent, but affirmed the master's findings on the merits. Certainly if the mistaken reference was a jurisdictional flaw, the only proper disposition by the appellate court would have been to remand for a new trial before the district judge.

### Standard of Review

The final inquiry concerns the weight to be given to the magistrate's findings of fact and conclusions of law upon review by the district judge. The Standing Order of this Court as to the utilization of United States Magistrates, as amended, is cited in pertinent part in note 7, *supra*.

 While the Standing Order makes no distinction between the standard of review as it pertains to consensual or nonconsensual references, I find that Paragraph 13.1 sets the standard of review *only* for reconsideration of nonconsensual references. If the Magistrates Act is to achieve the formidable goal of relieving the burgeoning case load of the district courts, the findings of a magistrate following a consensual reference to him must be taken as presumptively correct upon review by the district judge. Thus the standard of review adopted by the Supreme Court in Kimberly v. Arms, *supra*, pertaining to review following a consensual reference to a master, will be adopted by this Court for review following a consensual reference to a magistrate. In *Kimberly*, the court stated:

> "It is not within the general province of a master to pass upon all the issues in an equity case, nor is it competent for the court to refer the entire decision of a case to him, without the consent of the parties. It cannot, of its own motion, or upon the request of one party, abdicate its duty to determine by its own judgment the controversy presented, and devolve that duty upon any of its officers. But when the parties consent to the reference of a case to a master or other officer to hear and decide all the issues therein, and report his findings, both of fact and of law, and such reference is en-

tered as a rule of the court, the master is clothed with very different powers from those which he exercises upon ordinary references, without such consent; and his determinations are not subject to be set aside and disregarded at the mere discretion of the court. A reference, by consent of parties, of an entire case for the determination of all its issues, though not strictly a submission of the controversy to arbitration,—a proceeding which is governed by special rules,—is a submission of the controversy to a tribunal of the parties' own selection, to be governed in its conduct by the ordinary rules applicable to the administration of justice in tribunals established by law. *Its findings, like those of an independent tribunal, are to be taken as presumptively correct, subject, indeed, to be reviewed, under the reservation contained in the consent and order of the court, when there has been manifest error in the consideration given to the evidence, or in the application of the law, but not otherwise.* The reference of a whole case to a master, as here, has become in late years a matter of more common occurrence than formerly, though it has always been within the power of a court of chancery, with the consent of parties, to order such a reference. Haggert v. Welsh, 1 Sim. 134; Dowse v. Coxe, 3 Bing. 20; Prior v. Hembrow, 8 Mees. & W. 873. The power is incident to all courts of superior jurisdiction. Newcomb v. Wood, 97 U.S. 581, 583, 24 L.Ed. 1085. By statute in nearly every state, provision has been made for such references of controversies at law. And there is nothing in the nature of the proceeding, or in the organization of a court of equity, which should preclude a resort to

---

A distinction must be made between an attempt to invoke the jurisdiction of the United States courts by consent and, as here, once properly before an Article III tribunal to consent to a hearing before a non-article III judge. Certainly it is no anomaly in our federal judicial system that certain

Article III powers be exercised by non-article III personnel (bankruptcy judges, masters) or non-article III tribunals. See Palamore v. United States, 411 U.S. 389, 93 S. Ct. 1670, 36 L.Ed.2d 342 (1973). See also Yascavage v. Weinberger, *supra;* Comment, 40 U.Chi.L.Rev. 584 (1973).

it in controversies involving equitable considerations.

By the consent in the case at bar it was intended that the master should exercise power beyond that of a reporter of the testimony. If there had been such a limitation of his authority, there would have been no purpose in adding to his power 'to hear the evidence' the power to 'decide all the issues between the parties, and make his report to the court, separately stating his findings of law and of fact,' together with the evidence. To disregard the findings, and treat the report as a mere presentation of the testimony, is to defeat, as we conceive, the purpose of the reference, and disregard the express stipulation of the parties. We are therefore constrained to hold that the learned court below failed to give to the findings of the master the weight to which they were entitled, and that they should have been treated as so far correct and binding as not to be disturbed, unless clearly in conflict with the weight of the evidence upon which they were made."

129 U.S. at 524–525, 9 S.Ct. at 359–360 (emphasis added).

The Court is mindful that the standards for review set down in *Kimberly* are no longer applicable to consensual references to a *master* by virtue of Rule 53(e)(4), Fed.R.Civ.P. See note 13, *supra*. However, because the Magistrates Act was specifically designed to overcome the problems inherent in the system of references to a master, Yascavage v. Weinberger, *supra*; Comment, 40 U.Chi.L.Rev. 584 (1973), and since the Magistrates Act expressly permits references *beyond* those which would be permitted to masters under the strictures of Rule 53, this Court is not bound to follow the review standards currently in effect as to Rule 53 references with regard to review of a magistrate's finding following a consensual reference. All that is required under the "additional duties" language of 28 U.S.C. § 636(b) is that the reference (and hence the review thereof) not offend the Constitution and laws of the United States. The holding of the Supreme Court in Kimberly v. Arms, *supra*, stands as clear and unambiguous authority that the "presumptively correct" and "manifest error" standards enumerated therein, as to both findings of fact and conclusions of law, are constitutionally valid criteria for district court review following a consensual reference to the magistrate, despite the fact that Rule 53, Fed.R.Civ.P. has modified those standards with regard to consensual references to a master.

The defendants having filed a timely motion for reconsideration of the Magistrate's findings,[18] the Court will proceed

---

18. On April 19, 1974, defendants filed their objection to the magistrate's rescript and plaintiff filed a motion to confirm the magistrate's report. On that date an order was entered by this Court staying all further hearings before the magistrate. Because of the twofold nature of defendants' objection to the magistrate's report, i. e. objection to the reference and to the findings, I will construe their initial objection as both a petition to review the magistrate's findings as well as a motion to vacate *nunc pro tunc* the order of reference dated October 5, 1973. While defendants have filed an additional motion pursuant to Rule 60(b), Fed.R.Civ.P. (filed June 7, 1974), and since the magistrate's findings are not to be construed as a "final" order from which relief under Rule 60(b) can be afforded, I will construe that motion as supplementing the initial objection to the magistrate's findings.

I do not find persuasive plaintiff's contention that defendants' petition for review of the magistrate's findings must fail for lack of specificity. Through extensive memoranda of law this Court, as well as all parties, have been made well aware of the specific findings to which defendants object and the reasoning behind the objections. A technical error of pleading should not deprive defendants of their right to review of the magistrate's findings by this Court. In any event, drawing an analogy to objections to a master's report, this Court has the power "if it be deemed necessary and of vital importance in the interest of substantial justice" to mod-

to review said findings pursuant to the standards as set forth in *Kimberly v. Arms, supra.*

### Review of Magistrate's Findings

As discussed *supra,* the question before this Court on review of the Magistrate's rescript is whether there is "manifest error" in the Magistrate's findings of fact and conclusions of law. Upon a careful reading of the Magistrate's rescript and of the post-hearing briefs and the record, I find there are several novel and provocative issues of law which are determinative of the rights of the respective parties to this action. Among these, I particularly note the following:

(1) What is the legal basis upon which a common law property right in a service mark or trade dress is acquired? Has plaintiff acquired such rights? Must use of an entertainer's service mark be in connection with an established "trade or business," i. e., to identify the origin of a valuable commercial goodwill? Is the rationale enunciated in *Heinemann v. General Motors Corp.,* 342 F.Supp. 203 (N.D.Ill.1972) dispositive of this issue? Is the common law in relation to the acquisition of trademarks fundamentally different than for an entertainer's acquisition of service marks?

(2) The Magistrate found (findings of fact # 21–23) that the plaintiff was the first to create and use the "Paladin" marks in interstate commerce and that they were commercially used by him to identify and advertise his services as an entertainer and performer. Does such a finding meet the test for the creation of a common law property right in the marks, and is such a finding supported by the evidence?

(3) Conceding, as defendants do (Defs.' memorandum at 27) that a trademark or service mark need not be appurtenant to a profit-making business or trade, is it relevant whether the plaintiff herein performed his entertainment services for a fee?

(4) Are the Magistrate's findings as to "likelihood of confusion" to the public (findings of fact #17 and #18) pertinent to the infringement or unfair competition claims? (Defs.' memorandum at 33–37).

(5) Was the First Circuit opinion in *Columbia Broadcasting System, Inc. v. DeCosta,* 1 Cir., 377 F.2d 315 (1967) (in reversing jury verdict as to Count I of the complaint) res judicata or otherwise dispositive of plaintiff's claims of service mark infringement and unfair competition (Counts II and III)? Can it be said that under federal law plaintiff's alleged "marks" and "trade dress" have been placed in the public domain under the theory of *Sears, Roebuck & Co. v. Stiffel Company,* 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964) and *Compco Corp. v. Day-Brite Lighting, Inc.,* 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964), or are they to be considered true service marks exempted from the thrust of the *Sears-Compco* decisions and thus afforded protection under state law.

(6) Is New York law the appropriate choice under Rhode Island choice of law principles, and does New York law of unfair competition (and/or the federal law, 15 U.S.C. § 1125(a)) support judgment for plaintiff in addition to and/or wholly apart from the common law of service mark infringement?

I recognize the complexity of these issues and that resolution of this matter, whether in favor of plaintiff or defendants, requires extended analysis of legal principles in the context of a rather unique and novel factual record. This case involves subtle shadings of interpretation of the law which are not easily

ify the findings even in the absence of specific objections. In the Matter of Portland Electric Power Co., 97 F.Supp. 918 (D.Or.

1948). See generally 5A J. Moore, Federal Practice, paragraph 53.11 at 2991.

isolated but which are dispositive of the legal rights of the instant parties. I hasten to add that the travel of this complex litigation has not been typical. As the oldest case on the docket of this Court, it had been pending for more than ten years when the parties finally agreed in no uncertain terms to have this matter "heard and determined" by the Magistrate.

Without an appellate type of review but rather applying merely a "manifest error" standard of evaluation, I am not prepared to hold that the Magistrate's findings of fact and conclusions of law are unequivocally wrong.

It appears to me that a "manifest error" standard of review by the district court is not only constitutionally appropriate when restricted to a consensual reference as I have discussed, *supra,* but it also gives full meaning to the Congressional intent that magistrates relieve the workload in federal trial courts. If this is not so, then cases such as the one at issue will result in no savings of time to the court and litigants. On the contrary, it will only add an additional and time-consuming tier to the judicial process and effect little or no case backlog relief. The parties themselves sought the services of such a forum; a forum created by Congress pursuant to the Constitution, see note 2, *supra;* and in this case it was to resolve, with least possible future delay, a matter that had been pending an incredibly long period of time.

By "manifest error," we mean "evident error," "obvious," "capable of being easily understood or recognized at once by the mind." (Webster's Third New International Dictionary).

I am well aware of our appellate court's admonition that a pro forma "laying of hands" upon a magistrate's report will not be sanctioned following a reference. This teaching, however, involved two cases, namely, Rainha v. Cassidy, 454 F.2d 207 (1st Cir. 1970) and Reed v. Board of Election Commissioners of City of Cambridge, 459 F.2d 121 (1st Cir. 1972), which are distinguishable. See note 5, *supra.*

I make no pretense of either affirming or reversing the Magistrate. I simply find no manifest error and, therefore, while neither affirming or reversing, I deny the defendants' motion to vacate the Magistrate's rescript, adopt the Magistrate's report and enter a final and appealable judgment based thereon.